431 So.2d 441 (1983)
Dorothy Ertell Talbot HARRIS, et al.
v.
DARINN CORPORATION.
No. 82 CA 0503.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 10, 1983.
Michael P. Pellegrin, Houma, for defendant and appellant.
Jerry H. Schwab, Houma, for plaintiff and appellee.
Before PONDER, SAVOIE and CRAIN, JJ.
*442 SAVOIE, Judge.
Darinn Corporation, defendant, appeals from a judgment decreeing a servitude of passage over its property which fixed the servitude's route and width. Dorothy Ertell Talbot Harris and her three children are the owners of the dominant estate and the plaintiffs herein.
Plaintiffs purchased their property from Everett Talbot on July 11, 1969. Previously thereto, Everett Talbot had acquired the property from Greenacres Realty. Both sales granted to vendee, his heirs, successors and assigns, a right of ingress and egress of sufficient width to enable vehicular and pedestrian traffic over and across the property occupied by the Ramada Inn and owned by Greenacres.[1] Thereafter, the Ramada Inn property was transferred to the defendants, and is presently known as Houmas Inn.
Upon acquisition of the property, plaintiffs began construction of four apartments on the property. It is undisputed that from that time forward, plaintiffs and their lessees have used the driveway of the Houmas Inn for access to and from the apartment complex and U.S. Hwy. 90.
Subsequently, the property was annexed into the city limits and zoned. In 1980, in contemplation of some planned expansion and additional apartments on the property, Mrs. Harris attempted to have the property rezoned to meet the current zoning requirements. Defendant objected to the application for rezoning of the property on the grounds that there was insufficient access to the property. As a result, Mrs. Harris' request was tabled and later, withdrawn. In an effort to obtain the necessary Commission approval, plaintiffs requested that defendant designate the location and size of the servitude. Defendant refused, and suit was instituted.
While defendant raised nine assignments of error[2], the issues before this court are *443 the proper route and breadth of the servitude of passage.
In the present case, the servitude of passage was established in the sale between Greenacres Realty and Everett Talbot. As such, their agreement created a conventional servitude. See A. Yiannopoulous, Enclosed Estates: Louisiana and Comparative Law, 23 Loyola L.Rev. 343 at 374 (1977). When a right of passage space or of way is the result of a contract, its extent and the mode of using it is regulated by the contract. See former C.C. art. 722.[3]
"A cardinal rule of contractual interpretation is that the intention of the parties governs." A. Yiannopoulous, in 4 Louisiana Civil Law Treatise 370, Predial Servitudes, § 128 (1983). In the instant case, the parties intended to create a predial servitude for pedestrian and/or vehicular traffic across the servient estate in favor of the dominant estate. However, the contract is silent with respect to the breadth and location of the servitude of passage on the servient estate.
"Insufficient descriptions as to the location or extent of a predial servitude may be remedied by actual use of the servitude over a certain area of the servient estate." A. Yiannopoulous, supra, § 129 at 373.[4]
*444 It is undisputed that plaintiffs and their lessees have traversed the servient estate since the construction of the apartment complex in 1968. The route traversed was to exit the dominant estate onto the servient estate for approximately 20 feet (Segment A on the attached plat), then turn left down the center of the parking lot of Houmas Inn. This center drive is a straight-away area approximately 220 feet long and 25 to 30 feet wide (Segment B on attached plat). On both sides of this center area are side by side parking spaces. Ultimately, this drive exits onto U.S. Hwy. 90. The location of the servitude, therefore, is fixed along the route used.
The defendant argues that the right of passage along Segment A is limited to 13 feet in breadth. In support of this argument, defendant introduced a photograph showing freshly painted concrete bumpers and yellow barrels marking a 13-foot entrance/exit-way from the dominant estate onto the servient estate. However, defendants failed to prove how long the bumpers and barrels had been so located. In rebuttal, plaintiffs presented testimony which reflected that this so-called entrance/exit-way corresponded to a concrete apron constructed on plaintiffs' property by and as an accommodation to the contractor who constructed the apartment building. Further, they testified that this 13-foot concrete apron was not intended as a limitation of the breadth of the servitude. Additionally, plaintiffs' testimony revealed that the breadth used by plaintiffs and their lessees for purposes of ingress and egress exceeded 13 feet. Apparently, the trial court believed the testimony of plaintiffs.
The trial court fixed the route of the servitude along the lines shown on the attached plat. Viewing the circumstances in their entirety, the trial court further concluded that the use of the servitude by plaintiffs and their lessees has been to a breadth of 26 feet or more along the entire route, except for a short segment where the breadth was only 25 feet. Accordingly, the trial court fixed the breadth of Segment A of the servitude at 26 feet and the breadth of Segment B of the servitude as shown on the attached plat.
Here, the trial court sought to determine the intent of the parties from the facts before it. We cannot say that the trial court was clearly wrong. We cannot substitute our evaluations and inferences for those of a reasonable trier of fact. Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ refused, 392 So.2d 690 (La. 1980).
For the above and foregoing reasons, the judgment of the trial court is affirmed. Defendant-appellant is to pay all costs.
AFFIRMED.
PONDER, J., dissents and will assign reasons.
*445 
CRAIN, Judge, concurring.
I concur in the result, but I do not agree that it can be reached without application of former C.C. Art. 780.[1]
The approach taken by the majority requires a determination of the intent of the original grantee of the servitude, Everett Talbot. This record, however, does not reveal *446 any intent on the part of the original grantee, Everett Talbot. Mr. Talbot held the property for only 8 months before transferring it to the plaintiffs. During his short period of ownership, he made no use whatsoever of the servitude. Neither do we have his testimony before us as to what was his intended use. Therefore, it is impossible to tell his actual intent from the record.
The majority dismisses C.C. Art. 780 as inapplicable to this case, reasoning that in order for C.C. Art. 780 to apply, both the breadth of the passage and the manner in which it is to be used must be missing from the title. Since the title provides for vehicular and/or pedestrian traffic, the majority concludes that Art. 780 is inapplicable. I disagree. Article 780 does not require both the breadth and the manner in which the passage is to be used to be excluded from the title in order to be applicable. Rather, it applies if either is missing.
Applying Art. 780, extent of the servitude can be determined by the use to which it was put. Although Art. 780 says that,
"... the use which the person to whom the servitude is granted previously made of it will serve to interpret the title ...",
it is this writer's opinion that the use made of it by subsequent grantees can be determinative in two instances. First, where the original grantee made no use of the servitude and where the subsequent grantees made use of the servitude without objection by the owner of the servient estate. Secondly, where the original grantee made some use, but subsequent grantees made use different from and in addition to that made by the original grantee without objection by the owner of the servient estate.[2] The first condition is present in this case. Therefore, it is appropriate to look to the use made of the servitude by the plaintiffs.
I agree with the trial judge's finding that the plaintiffs' use of the servitude extended to a breadth of 26 feet or more along the entire route, except for a short segment where it was only 25 feet. Therefore, since I reach the same result as the writer of the opinion in this case,
I respectfully concur.
PONDER, Judge, dissenting.
I respectfully disagree with both opinions.
I agree that in the absence of expression of specific intent in the instrument creating the servitude and of testimony of the original grantee, we have to go to evidence of use to determine extent of the servitude.
Under Art. 749,[1] if the title is silent, the intention is to be determined in light of the *447 purpose. Under Art. 730,[2] any doubt is to be resolved in favor of the servient estate. I cannot agree that either the main opinion or the concurring one has properly applied these articles. There is no evidence at all that there was a need of any width beyond thirteen feet until the property was annexed by the city, bringing into application the zoning ordinance requirements. The self-serving conclusions of plaintiffs that the thirteen feet entrance was not intended to be a limitation of the width to be used is illogical and to me inconclusive. To say that the owner of the dominant estate restricts use to thirteen feet on his own property but requires more immediately on getting onto the servient estate violates, I believe, both spirit and letter of the applicable code provisions.
The tolerant allowance of use of area not occupied by parked vehicle and the provision of a twenty-five feet entrance to the highway to be used both by the motel patrons and those using the servitude do not lead to the conclusion that twenty-five, twenty-six or thirty feet width is required by the dominant estate. That requirement is made necessary by the zoning ordinance.
I believe it a distortion of the codal articles to require the servient estate to meet the zoning ordinance needs of the dominant estate.
NOTES
[1] The specific language in the sales contract between Greenacres represented by Sidney A. Pellegrin, and Everett Talbot providing for a servitude of passage is as follows:

"This sale is made and accepted subject to the following, to-wit:
* * * * * *
"3. It is expressly agreed and understood that a right of ingress and egress is extended by vendor, its successors or assigns, to the said Everett L. Talbot, his heirs, successors, or assigns, over and across the property occupied by the Ramada Inn and owned by Greenacres Realty, Inc.; it being the intention of vendor, its successors or assigns, to convey unto vendee a right of ingress and egress of sufficient width so as to enable vehicular traffic and/or pedestrians to get to and from the property herein conveyed."
The specific language in the sales contract between Everett Talbot and Dorothy Ertell Talbot, individually and as the natural tutrix of her minor children, providing for a servitude of passage, is as follows:
"This sale is made and accepted subject to the following, to-wit:
* * * * * *
"3. It is expressly agreed and understood that a right of ingress and egress is extended by Everett L. Talbot, his successors or assigns, to the said Mrs. Dorothy Ertell Talbot and the said minors, Richard E. Talbot, Jr., Stephanie Talbot, Timothy Talbot and Julie Talbot, their heirs, successors or assigns, over and across the property occupied by the Ramada Inn and owned by Greenacres Realty, Inc.; it being the intention of vendor, his successors or assigns, to convey unto vendee a right of ingress and egress of sufficient width so as to enable vehicular traffic and/or pedestrians to get to and from the property herein conveyed."
[2] SPECIFICATIONS OF ERROR

1. The trial court erred in fixing the width of the servitude of passage at twenty-six (26') feet when clearly, such width is far more than that which is sufficient to enable vehicular and/or pedestrian traffic to get to and from the dominant estate and such clearly violates the clear intent of the language creating the servitude.
2. The trial court erred in fixing the width of the servitude of passage at twenty-six (26') feet over and across appellant's property rather than fixing the width of the servitude at thirteen (13') feet when the uncontradicted evidence is that appellants have always plainly marked and kept open a thirteen (13') foot wide opening to appellee's property at the actual point of ingress and egress to appellee's property which thirteen (13') foot wide opening has always been of sufficient width so as to permit vehicular and/or pedestrian traffic as required by the language of the subject servitude.
3. The trial court erred in failing to apply Revised Civil Code Article 730 to the facts of this case which article provides that doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.
4. The trial court erred in concluding that the purpose for which the servitude of passage was created was for a particular land usage, namely, apartments and/or multi-family, when the title creating the servitude did not provide for a particular land usage, but rather provided only for "ingress or egress of sufficient width so as to enable vehicular and/or pedestrians to get to and from the property" in question.
5. The trial court erred in concluding that appellee's contemplated land usage at the time of their acquisition, i.e. apartments and/or multi-family, should and did determine the purpose behind creating the subject servitude of passage, when, as a matter of fact, the subject servitude of passage was not created by appellee's ancestor in title in appellee's act of purchase, but rather, the servitude of passage was created some eight (8) months before appellee acquired the property when appellee's vendor acquired the property from Greenacres Realty, Inc. and, as a further matter of fact, there is no evidence whatsoever to suggest that at the time the servitude was actually created, any of the parties to the conveyance contemplated that the servitude was being created to facilitate apartment usage of the dominant estate.
6. The trial court erred in the manner in which it interperted Revised Civil Code Article 749 when it determined that the purpose of the servitude was governed by appellees intended land usage at the time of appellees acquisition, notwithstanding the fact that the servitude was created not when appellee acquired the property, but rather when appellee's ancestor in title acquired the property thereby failing to recognize that appellee's vendor could convey no greater rights than he possessed; and, further, in failing to recognize the clear intended purpose of the servitude as expressed by the language of the servitude itself, i.e. "... it being the intention of vendor ... to convey unto vendee a right of ingress or egress of sufficient width so as to enable vehicular traffic and/or pedestrians to get to and from the property herein conveyed."
7. The trial court erred in concluding that because former Revised Civil Code Article 780, (now R.C.C. 749), provided for the width of a foot passage when the title was silent to be eight (8') feet where straight and ten (10') feet where it turns that the legislature must have contemplated a servitude of passage of at least twenty-four (24') feet for vehicular traffic.
8. The trial court erred in applying Revised Civil Code Article 690 to the facts of this case inasmuch as Article 690 regulates servitudes not created by title and the subject servitude was created by title.
9. The trial court erred in considering zoning regulations promulgated in 1980 by a government agency with a view toward determining the intent of parties to a private contract which was executed some twelve (12) years before, in 1968, and in so doing, the trial court authorized the taking of property without compensation.
[3] In 1977 Title IV of Book II of the Civil Code consisting of articles 646 to 822, was amended and re-enacted. Acts 1977, No. 514, § 1. The amended title, effective January 1, 1978, consists of articles 646 to 774. In the controlling articles are the former articles which were applicable at the time the servitude was created. See Johnson v. Anderson-Dunham Concrete Co., Inc., 31 So.2d 797 (La.1947); West v. State, State Superintendent of Public Education, 324 So.2d 579 (La.App. 1st Cir.1975).
[4] The plaintiff complains as to the trial court's interpretation of La.C.C. art. 780. We note that this article applies only "If the title by which a passage is granted does not designate its breadth, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, ..." La.C.C. art. 780 before 1977 amendment. While the instant title does not define the servitude's breadth, it specifically provides the manner (i.e., vehicular and/or pedestrian traffic) in which the servitude is to be used. Accordingly, this article is not applicable to the instant case.
[1] See footnote 3 of the opinion of Judge Savoie in this case. Former C.C. Art. 780 read as follows:

"If the title by which a passage is granted does not designate its breadth, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, the use which the person to whom the servitude is granted previously made of it will serve to interpret the title.
If there was no such use made of it before, the probable intention of the parties must be considered, and the purpose for which the passage is granted.
If these circumstances can afford no light, it must be decided in favor of the land which owes the servitude, and a foot passage must be conceded eight feet wide, where it is straight, and ten feet wide where it turns."
[2] This interpretation of C.C. Art. 780 was apparently adopted in McClure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (3rd Cir. 1977).

"There was no evidence made (sic) of any opposition having been made by the Country Club to the Kaiser's owning and using an automobile in traversing the Country Club property. No opposition, until within one year of filing of this suit, was made to subsequent owners of the tract using automobiles to get to the tract. The only opposition made was to transporting heavy equipment over it. The permitted use of automobiles in the past should, in the opinion of the undersigned, support the interpretation that the word `lane' contemplated the use of automobiles and occasional service type trucks or vehicles required to service a house on the 29-acre tract."
Also, at page 1097,
"Considering the use which the servitude owners have made of the servitude over the past thirty plus years, the history of which use has previously been set forth herein, we fix the width of the right of passage owed to the plaintiff's estate at twelve (12) feet. See Patin v. Richard, 291 So.2d 879 (La.App. 3rd Cir.1974) writ denied, 294 So.2d 827 (La. 1974)" at 1097.
[1] La.C.C. art. 749:

If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.
[2] La.C.C. art. 730:

Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.