708 So.2d 838 (1998)
Gerard A. KEELEY, et al., PlaintiffsAppellants,
v.
Mark R. SCHEXNAILDER, et ux., DefendantsAppellees.
No. 97-1609.
Court of Appeal of Louisiana, Third Circuit.
April 1, 1998.
*839 Glen A. James, Sulphur, for Gerard A. Keeley, et al.
Nicholas Pizzolatto, Jr., Lake Charles, for Mark R. Schexnailder, et ux.
Before YELVERTON, SAUNDERS and PICKETT, JJ.
YELVERTON, Judge.
Plaintiffs, Gerard A. Keeley, Dennis Arnold, William E. Keeley, Sr., and Lora Hoke Keeley, brought an action for injunctive relief to prevent defendants, Mark and Patricia Dee Schexnailder, from interfering with the exercise of their rights under a predial servitude. The trial court granted part but not all of the relief prayed for and issued a mandatory injunction. The trial court reduced and redefined the servitude. Plaintiffs appeal. We reverse the reduction and redefinition of the servitude, amend to grant all of the relief prayed for, and issue a new mandatory injunction.

FACTS
In 1962 Rupert E. West, the owner of all of Lot Ten of JANE SALLIER WEST HEIRS PARTITION, established the servitude by executing and recording a juridical *840 act in Conveyance Book 822 at page 421 of the records of Calcasieu Parish. The title creating the servitude reads in pertinent part as follows:
WHEREAS, appearer has sold and intends to sell various parcels or lots of property in Lot Ten (10) of the Partition of a portion of the property of JANE SALLIER WEST HEIRS....
AND WHEREAS, the only water frontage is at the East end of said Lot Ten (10), and appearer desires that each and every owner of any parcel or lot of property in said Lot Ten (10) have access to said water frontage.
NOW, THEREFORE, appearer does hereby formally subject the hereinafter described property to a servitude of way or passage and dedicates the same in favor of all present and future owners of lots or parcels of property in Lot Ten (10) ..., the part or portion thereof to be burdened with said servitude being described as follows, to-wit:
Commencing at a point eight hundred twenty-four (824) feet East of the Southwest (SW) Corner and on the South line of Lot Ten (10) ... thence East along the South line of said Lot Ten (10) a distance of fifty-three (53) feet, more or less, to the Southeast (SE) Corner of said Lot Ten (10), thence Northeast along the East line of said Lot Ten (10) a distance of two hundred twenty-eight and six-tenths (228.6) feet, more or less, to the Northeast (NE) Corner of said Lot Ten (10), thence West on the North line of said Lot Ten (10) a distance of fifty-three (53) feet, more or less, to a point which is eight hundred twenty-four (824) feet east of the Northwest (NW) Corner of said Lot Ten (10), thence in a Southwesterly direction two hundred twenty-eight and six-tenths (228.6) feet, more or less, to the point of commencement.
A plat of a survey of the 228. 6' × 53' servitude was recorded in Plat Book 13 at page 50 of the records of Calcasieu Parish.
A few days after that servitude was established, West granted a 40 foot right-of-way east and west across the center of Lot Ten to the Police Jury of Calcasieu Parish for a public road. This public road, named Leisure Lane, bisects the 228.6' × 53' servitude area and ends near the edge of a lake, known as Rupert Lake, which is the water frontage referred to in the designation of the servitude. Fronting Leisure Lane on both the north and the south are the lots, the dominant estates, in the subdivision of Lot Ten.
The parties in this case own some of those lots. The servient estate is situated with its long side perpendicular to Leisure Lane on the east end of Lot Ten. There is water frontage on the north, east, and south sides of the servient estate. The lot next to the servient estate on the west, and on the north side of Leisure Lane, is where the Schexnailders live.
The water on which the servitude abuts is navigable, and it is connected to Moss Lake. It is directly affected by the tides of the Gulf of Mexico. Also, there are seasonal changes in the water level. Parts of the 228.6' × 53' area are always under water. The tides, and seasonal water level changes, render uncertain at any given time how much upland area there is. There was evidence that sometimes a combination of rain, winds, and tides cause virtual inundation of the south half of the servitude area. The evidence also showed that the north half (which the trial judge released from the servitude) is three feet higher and that much of the north half is always out of water.
The Schexnailders became property owners in Lot Ten in 1993. Their vendors were the son and widow of Rupert West, who established the servitude. Earl West testified that he and his mother sold the Schexnailders four parcels of property. The sale instrument was not introduced in evidence. We will describe the property sold as it was described in the testimony of Earl West. According to the questions asked of him, and his testimony, the first of the four parcels was the property where the Schexnailders now live; the second was the servitude area, 228.6' × 53'; the third was the road, Leisure Lane; and the fourth was a certain area of water containing about five acres, which Mr. West described as "all the water area in front of Sally Jean's-or Dr. Toniette's camp." *841 It was after the Schexnailders bought this property in 1993 that the owners of the dominant estates began to experience difficulties utilizing their servitude.
What precipitated this lawsuit after the Schexnailders purchased the property in 1993, was their placement of bricks, boat trailers, a cement walkway, a flower garden, some sand, and several recreational items on the servient estate. They forbade the use of the northern part. At one time they blocked Leisure Lane at the entrance of the servient estate with a boat and automobiles and posted it with a "Keep Out" sign. The latter items were removed prior to trial.
Several owners of the dominant estates testified at the trial. According to their testimony, their enjoyment of the servitude before the Schexnailders moved in was without interference. They testified that they used the servitude freely in years past. They used the water frontage to fish, barbecue, walk dogs, stand on the waters' edge, walk their children and grandchildren to the water, and launch boats.
Gerard Keeley, a plaintiff, testified that he had launched his boats on the south water frontage and on the east water frontage of the servitude area. When he tried to use the water frontage on the north side, adjacent to the Schexnailder home, Mr. Schexnailder told him he could not do it because that was private property.
The petition for a mandatory injunction sought the removal of any and all obstructions from the servitude area. It also sought judgment enjoining the Schexnailders from otherwise interfering with the plaintiffs' rights of passage and access to the water frontage. The plaintiffs contended that all of the servitude area was needed for the exercise of their rights. The defendants contended that the rights of the dominant estate owners should be restricted to launching boats on a restricted part of the servitude area, and they asked the trial court to specify that restricted part.
The trial court decided for the defendants. The formal judgment recognized a servitude of passage in favor of the dominant estates in Lot Ten over the servitude area south and east of the north line of Leisure Lane, but declared that the servitude was "one of passage only, and for no other purpose." A restricted passage, from where Leisure Lane ended to the lake, was recognized. The judgment gave the Plaintiffs the right to make reasonable alterations to this restricted passage, the 40 foot wide extension of Leisure Lane to the water's edge, to accommodate the launching of a boat. The trial court reduced the extent of the servitude, by simply rewriting it, in the following language:
[T]hat a servitude of passage to Rupert Lake is recognized in favor of the Plaintiffs and all other owners, or future owners, of any parcel of property in Lot Ten (10) of Jane Sallier West Heirs Partition, as per plat recorded in Plat Book 13 at Page 50, records of Calcasieu Parish, Louisiana, over an area bounded on the north by the north line of the public road known as Leisure Lane, bounded on the east by Rupert Lake, bounded on the south by the south line of said Lot Ten (10), and on the west by the east line of the property purchased by Gerard Keeley by deed dated November 4, 1994 and recorded in Conveyance Book 2447 at Page 135 of the records of Calcasieu Parish, Louisiana, and extending northerly along said east line to the north line of Leisure Lane.
A mandatory injunction was issued ordering defendants to remove all obstructions from the reduced servitude area. Finally, the judgment decreed that all of the property north of the north right-of-way line of Leisure Lane, previously encumbered by the servitude of passage, was "released from the servitude and returned to defendants unencumbered."
We reverse in part, amend, and affirm in part as amended.

LAW AND ANALYSIS
When predial servitudes are established by the owner, the use and extent of such servitudes are regulated by the title by which they are created. La.Civ.Code art. 697; Ogden v. Bankston, 398 So.2d 1037 (La.1981). If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined *842 in the light of its purpose. La.Civ. Code art. 749. When the title provides the exact dimensions of the area affected by the servitude, the title is not silent as to the extent of the servitude. Red River v. Noles, 406 So.2d 294 (La.App. 3 Cir.1981).
The trial court in effect reduced, or restricted the area of the servitude to a portion of the water frontage. This was error. The code articles permit the court to determine the extent and use of a servitude only when the title is silent. Here the title announces the intent of the grantor expressly, that "appearer desires that each and every owner of any parcel or lot of property in said Lot Ten have access to said water frontage." The juridical act which created the servitude of access to the water frontage and the right-of-way or passage to the water frontage made no restriction or limitation on the water frontage. The grantor said simply that the only water frontage in Lot Ten of the partition was at the east end of said Lot Ten, and that he wanted each and every owner of any parcel or lot of property in said Lot Ten to have access to "said" water frontage. Webster's Ninth New Collegiate Dictionary defines waterfront as: "land, land with buildings, or a section of a town fronting or abutting on a body of water." The extent of the servitude was carefully surveyed, laid out, and described by the grantor.
There is evidence in this case that the servitude has been used in various ways. People walk down to the waters' edge and stand there and enjoy the view. Others put canoes into the water. They have barbecued there. They have fished there. Some have driven boats on trailers and launched them into the water. In other words, they have made use of the water frontage in ways customary in this part of the country for people who enjoy access to water frontage but who do not own the water frontage. A partial use of a servitude constitutes use of the whole. La.Civ.Code art. 759. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La.Civ.Code art. 730. If any doubt ever existed concerning this servitude, it was as to the manner of its exercise or use. Such uncertainty may be made certain over time by the actual use of the servitude. Watson v. Eaglin, 606 So.2d 87 (La.App. 3 Cir.1992); Harris v. Darinn Corp., 431 So.2d 441 (La.App. 1 Cir.), writ denied, 435 So.2d 429 (La.1983). The servitude in this case was freely used from soon after its establishment until the Schexnailders purchased in 1993.
The servitude of access to water frontage in this case means a servitude of enjoyment of use of the water frontage. In the language of the title, there is nothing to indicate that the grantor intended that the extent of the use was to be anything less than all of the water frontage, or that the rights to enjoyment were restricted to the launching of boats. The grantor's express desire was that each and every owner in Lot Ten have access to the only water frontage in Lot Ten, and he established that right of use over the measured and platted 228.6' × 53' area encompassing that water frontage, then provided a servitude of way or passage, again making the entire 228.6' × 53' property subject to the way or passage. There is no ambiguity in the instrument. The rights granted plainly contemplate use of all the water frontage and access and passage across any part of the property to any part of the water frontage. If the grantor had intended that the extent and manner of use of the servitude were to encompass less than the 228.6' × 53' area, he would have specified less than the 228.6' × 53' area.
The trial judge wanted to be fair-indeed, he expressly searched for "the best compromise I can come up with" -and believed that the court possessed the right to relocate or confine the servitude. La.Civ.Code art. 750 states that if the title does not specify the location of the servitude, the owners of the servient estate shall designate the location. As we have stated, the title in the present case specifies the location of the servitude. The owner of the servient estate may not reduce the width of the servitude. La.Civ. Code art. 748; Toso v. Borne, 388 So.2d 132 (La.App. 4 Cir.1980).
The establishment of a predial servitude by title is an alienation of a part of the property. La.Civ.Code art. 708. The owners of the servient estate may do nothing *843 tending to diminish or make more inconvenient the use of the servitude. La.Civ.Code art. 748.
We do not have the benefit in the record of the West to Schexnailder sale instrument to determine precisely what it was that the Schexnailders bought, or thought they bought, when they acquired their ownership rights to the servitude area. Undoubtedly they believed that their rights as owners of the land should prevail over the rights of the other owners of the dominant estates. But their use of the servitude area clearly diminished and made more inconvenient the use of the servitude by the dominant estate owners. Their ownership of the servitude area no more conveys to them the right to diminish or make more inconvenient the use of the servitude area than did their purchase of Leisure Lane give them the right to diminish or make more inconvenient the use of that public right-of-way.
We reverse in part, affirm in part, and amend the judgment of the trial court and recast the judgment in favor of the plaintiffs, and against the defendants, as follows: IT IS ORDERED, ADJUDGED AND DECREED That: A permanent injunction issue herein enjoining MARK R. SCHEXNAILDER and PATRICIA DEE SCHEXNAILDER, born Broussard, from doing any act which would interfere with the plaintiffs' right of passage over and right of access to the water frontage on the servitude area as is described in the juridical act of Rupert E. West dated August 31, 1962, recorded in Conveyance Book 822 at page 421 of the Records of Calcasieu Parish, Louisiana, said prohibited acts to include, but are not limited to, the following: (a) parking trailers, boats, cars, trucks, campers or other vehicles on the servitude area; (b) placing brick and concrete on the servitude area so as to prevent or interfere with boat launching; (c) placing of a flower garden, gazebo or recreational items on the servitude area; and (d) erecting a fence along any part of the boundary of the servitude area so as to prevent access by the plaintiffs. The judgment ordering the defendants to remove all obstructions from the servitude area is affirmed, but it is amended to include all of the servitude area as described in the original grant. Judgment is also rendered reversing the award of costs. The defendants are responsible for costs both here and below.
REVERSED IN PART, AMENDED, AFFIRMED IN PART AS AMENDED AND RENDERED.