Dear Mr. Fincher:
You have requested an opinion from this Office regarding the authority of the Claiborne Parish Watershed District Commission's (Commission) authority to permit certain uses of waters, both surface and subsurface. With regard to surface water withdrawals, you seek clarification of the Commission's authority to sell large volumes of water from (a) Lake Claiborne; (b) any tributary to Lake Claiborne; and, (c) any parish stream outside of the Kisatchie National Forest.
You also ask the following questions with regard to withdrawal of groundwater for new commercial uses:
1) Are there specific State controls regarding new commercial uses of groundwater (a) from an existing well; and, (b) from an existing public supply well?
2) Is there a minimum volume of water that would be subject to such control (in question one above)? *Page 2 
3) Are there any controls that apply when a commercial user that is withdrawing from a public supply of groundwater increases its withdrawal amount?
4) What is the extent, if any, of the authority of the Commission regarding new commercial groundwater withdrawal within the parish?
BACKGROUND LAW:
Under Louisiana law, the beds of naturally navigable water bodies are public things and the beds of non-navigable water bodies are private things. See La.C.C. Art. 450. However, the waterrunning in a water body, whether navigable or not, is a public thing subject to public use. Id. See also La.C.C. Art. 452; La.R.S. 9:1101. Landowners with riparian property and members of the general public have the right to use running water for their needs, the latter only if they have access to it. Members of the general public do not have the right to cross private lands, without some authority granted by the private landowner, in order to access running water. See Pizanie v. Gauthreaux,138 So. 650 (La. 1931); Delahoussaye v. Patout, Labau andCo., 81 So. 215 (La. 1919).
The owner of an estate fronting on a river or stream has, in addition to the right of public use, a riparian right for the use of the water. La.C.C. Art. 657 explains that the owner of a riparian estate may use the water as it runs for agricultural or other purposes.[1] An owner whose estate is traversed by running water has an additional privilege. Article 658 of the Louisiana Civil Code authorizes such an owner to change the water's course within his property. However, he cannot prevent or redirect the flow of the water. Rather, "he is bound to return it to its ordinary channel where it leaves his estate." La.C.C. Art. 658. With the exception of preventing a trespass of his own land, a riparian owner may not exclude the public use of the running water or the use of the water by other upstream or downstream riparian landowners. Id.
The riparian rights defined in the Civil Code are considered "accessory rights," which attach to riparian lands because of their adjacency to the water source. Delachaise v. Maginnis,11 So. 715, 716 (La. 1892). It remains to be seen whether or not the right to use water can be conveyed separately and distinctly from the land. See also La.C.C. Arts. 649, 650. The riparian right to use the water, a natural servitude, cannot be lost by non-use because prescription of non-use does not apply to natural servitudes. See La.C.C. Art. 758.
Whether one can transfer a riparian right separately and distinctly from the full ownership (fee title) to riparian land has never been addressed by the courts of this State. However, inKeeley v. Schexnailder, 1997-1609 (La. App. 3 Cir. 4/1/98); 708 So. 2d 838, the court considered a riparian landowner's grant of an servitude of access to the waterfront to a non-riparian landowner. In upholding the right of access, the court *Page 3 
did not address whether it would uphold a grant of the right to withdraw water. Id. at 843.[2] Even if the court had considered whether a right to withdraw water could be granted by the riparian owner, it is extremely unlikely that that grant could exceed the rights of the riparian owner because one cannot grant greater rights to a thing than one owns.
Based upon the above analysis, if there is running water, there is no per se private ownership of that water under Louisiana law. Thus, the State of Louisiana owns the water in its capacity as a public person and holds it in trust for the people of the State. Because the running water belongs to the State, La.Const. Art. VII, § 14 applies. This law provides:
Except as otherwise provided by this constitution, the property, or things of value of the state or any political subdivision shall not be . . .donated to or for any person, association, or corporation, public or private.
Accordingly, running water or impounded running water is not allowed to be taken free of charge out of a channel in a volume that would impair the rights of other riparian owners. Running water is a thing of value that belongs to the people of the State of Louisiana, and can only be taken by paying sufficient consideration to the State for its value.
SPECIFIC LAW WITH REGARD TO THE COMMISSION:
La.Const. Art. IX, § 1 requires that:
The natural resources of the state, including air and water . . . shall be protected, conserved and replenished insofar as possible and consistent with the health, safety and welfare of the people. The legislature shall enact laws to implement this policy.
Guided by this public trust mandate, as noted above, the Legislature has enacted provisions to manage the State-owned water that has been impounded in several *Page 4 
districts. Specifically, La.R.S. 38:2869 (emphasis added) authorizes the Commission to:
(8) Cooperate and contract with persons, firms, associations, partnerships, private corporations, political subdivisions of this state, or other public corporations and with any other local, state, and governmental agencies for the sale or use of any waters impounded by the district.
Clearly, the Commission, is authorized, within the parameters of La.Const. Art. IX, § 1 and La.R.S. 38:2869(8), to sell and use waters impounded by the District and within its statutory jurisdiction. The Commission is not authorized to withdraw, or empowered to authorize, the withdrawal of flowing water from any streams — only the impounded waters.
With regard to your second set of inquiries, the Department of Transportation and Development, Water Resources Program, [3] the Commissioner of Conservation[4], the Groundwater Resources Commission[5], along with the Sparta Groundwater Conservation District[6] are all granted the authority to mandate permitting and proper use of all groundwater withdrawals. However, the Commission is given the authority under La.R.S. 38:2870:
(7) To manage and control surface and groundwater levels in the district. Any rule or regulation pertaining to the management and control of groundwater levels in the district shall be subject to approval by the Groundwater Resources Commission.
Therefore, the Commission may manage and control the groundwaterlevels within the district, subject, however to approval by the Groundwater Resources Commission. This Office cannot opine on what rules and regulations the Groundwater Resources Commission may approve. The Commission should consult with all of the above-named entities for the answers to your questions regarding approval of groundwater controls by the Commission.
GENERAL GUIDANCE:
In the event that the Commission is presented with a request to transfer or sell State-owned surface waters within its statutory jurisdiction, the Commission should first review its statutory authority to determine if it is in fact authorized to sell the State-owned surface waters. If it is so statutorily-authorized, the Commission may enter into negotiations with the private entity for the sale of State-owned surface water, with the *Page 5 
understanding that any such sale must be for fair value, and that any agreement must be reduced to writing in the form of a contract or cooperative endeavor agreement and, further, that any such agreement is subject to prior review and approval by the Office of the Attorney General and the Department of Natural Resources.
The prior written approval of the Attorney General and the Department of Natural Resources of any such agreement is mandated pursuant to the State constitutional obligations and mandates set forth in LA Const. Art. IX and which directs and requires these offices to protect the natural resources and the environment of the State.
Finally, until such time as the Legislature specifically provides for the allocation of any sums received from the sale of such waters (unless specific statutory direction already exists), any sale of State-owned surface water must include a provision that provides that all monies paid shall be placed in escrow and not released or expended without the written approval and consent of the Office of the Attorney General and the Department of Natural Resources. If such "specific direction already exists", the public entity claiming same should promptly notify in writing the Office of the Attorney General and the Department of Natural Resources of the statutory authority supporting this specific authority.
SPECIFIC CONCLUSION WITH REGARD TO THE COMMISSION:
With regard to surface waters, the Commission is not authorized to withdraw, nor is it empowered to authorize the withdrawal and sale, of flowing water from any streams — only the waters impounded bythe Commission. With regard to groundwater rules and mandates, and your four questions regarding same, while the Commission is authorized to make rules and mandates to manage and control groundwater levels within its jurisdiction, those rules and mandates are subject to approval by the Groundwater Resources Commission. Additionally, the Commissioner of Conservation and the Sparta Groundwater Conservation District have mandating and permitting authority for the withdrawal of groundwater within your jurisdiction. The Commission should work together with these other entities to form rules and mandates to manage and control the groundwater. This Office cannot opine on what all of these entities will agree to as that is a matter of the discretion of each entity.
We trust that this analysis adequately responds to your request. Should you have any further questions or concerns, please do not hesitate to contact this Office. *Page 6 
Sincerely,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ Irys L.V. Allgood Assistant Attorney General
JDC/ILVA/jv
[1] See also Verzwyvelt v. Armstrong-Ratterree, Inc.,463 So.2d 979 (La. App. 3 Cir. 1985) (same result for an oxbow lake, former channel of Red River).
[2] The ownership and use of waters is also regulated by federal statutes touching upon the subject, scattered provisions in the Louisiana Revised Statutes, and a few provisions of the Louisiana Civil Code. Special purpose districts of the State of Louisiana are clearly authorized in Chapter 38 of the Revised Statutes to use and distribute surface water for non-riparian purposes. See La.Const. Art. IX, Sec. 1 (1974); La.R.S. 9:1101; 14:58; 38:216; 56:362; 56:1431; 56:1451. In addition, Irrigation Districts (La.R.S. 38:2101), the Sabine River Authority (La.R.S. 38:2321, etseq.), and Water Conservation Districts (La.R.S. 38:2551, etseq.) are given authority to control water usage in designated areas. Additionally, La.R.S. 38:218 imposes a penalty if waters are diverted from their natural course and are not returned to it without undue retardation. Probably more significant in terms of the volume of water involved have been specific legislative authorizations. See specifically: municipalities, La.R.S. 33:841; waterworks districts, La.R.S. 33:3815; waterworks companies, irrigation companies and irrigation districts. For companies, see specifically La.R.S. 45:61; for districts, see La.R.S. 38:2112; for a number of special purpose districts, see La.R.S. 38:2501 et seq.
[3] See La.R.S. 38:3091 et seq.
[4] See generally La.R.S. 30:806 et seq.
[5] See La.R.S. 38:3097.4
[6] See La.R.S. 38:3087.131 et seq.