Dear Mr. Mitchell:
You have requested an opinion of this Office regarding who controls the surface water rights for Clear Lake and Smithport Lake in DeSoto Parish. We are informed by DeSoto Parish Bayou Fish and Game Commission that water is being pumped out of these lakes and some streams in DeSoto Parish for natural gas drilling purposes in your area. Your concerns related to who controls the water originate from this type of usage.
OVERVIEW OF ISSUES:
It is our understanding, based on information from the State Land Office, Louisiana Division of Administration, that thebottoms of these two lakes are owned (for the most part) by private individuals; and, therefore, are not completely State-owned water bottoms. According to the State Land Office title files, the portions that are privately owned were dry land owned by the State and sold before the property was flooded after the building of a dam. However, we also understand, from the State Land Office, that the State still owns a few small pieces of land under these lakes.[1] Additionally, the title files in the State Land Office regarding these lakes show that, in 1948, each one of the private landowners of the land under the lakes granted a "perpetual use" of their property to the State of Louisiana for the use and benefit of the Bayou Pierre Fish and Game Preserve for their sole use as a fish and game preserve. One of the stipulations was that the State must declare the "inland waters" of said preserve or refuge to be a part of the preserve. At that time, the Bayou Pierre Fish and Game Preserve was part of the Louisiana Department of Wildlife and Fisheries. *Page 2 
That preserve has been abolished as a State entity.[2]
Therefore, the State of Louisiana, through the Department of Wildlife and Fisheries, now holds the servitudes. We do not have enough factual information to be able to know whether there is water from waterways "running" through these two lakes. This is important because questions of the ownership and control of surface waters rest on several factors; for example, whether the waters are "running waters". Moreover, we do not have any factual knowledge as to whether or not these lakes are fed by underground aquifers. These questions are matters of fact that must be determined by a court of competent jurisdiction based upon the presentation of scientific and historic evidence of the water in these lakes. Given these facts and under the following legal analysis, if there is not running water in these lakes, the owners of the land under the lakes own the water and have granted, by way of the perpetual use noted above, the right to control the water to the State of Louisiana for use as a fish and game preserve. Conversely, if there is running water in these lakes, the State of Louisiana owns the water in its capacity of a public person and holds it in trust for the people of the State. Regardless of who controls the water, if it belongs to the State it cannot be sold without specific statutory authorization, as more fully explained below.
BACKGROUND LAW:
Under Louisiana law in general, the beds of naturally navigable water bodies are public things and the beds of non-navigable water bodies are private things. See La.C.C. Art. 450. However, the water running in a water body, whether navigable or not, is a public thing subject to public use.Id. See also La.C.C. Art. 452; La.R.S. 9:1101. Landowners with riparian property and members of the general public have the right to use running water for their needs, the latter only if they have access to it. Members of the general public do not have the right to cross private lands in order to access running water without some authority granted by the private landowner. SeePizanie v. Gauthreaux, 138 So. 650 (La. 1931);Delahoussaye v. Patout, Labau and Co., 81 So. 215 (La. 1919). The owner of an estate fronting on a river or stream has, in addition to the right of public use, a riparian right for the use of the water. La.C.C. Art. 657 explains that the owner of a riparian estate may use the water as it runs for agricultural or other purposes.[3] An owner whose estate is traversed by running water has an additional privilege. Article 658 of the Louisiana Civil Code authorizes such an owner to change the water's course within his property. However, he cannot prevent or permanently redirect the flow of the water. Rather, "he is bound to return it to its ordinary channel where it leaves his estate." La.C.C. Art. 658. With the exception of preventing a trespass on his own land, a riparian owner may not exclude the public use of the running water or the use of the water by other *Page 3 
upstream or downstream riparian landowners. Id.
The riparian rights defined in the Civil Code are considered "accessory rights," which attach to riparian lands because of their adjacency to the water source. Delachaise v. Maginnis,11 So. 715, 716 (La. 1892). It remains to be seen whether the right to use water can be conveyed separately and distinctly from the land. See also La.C.C. Arts. 649, 650. The riparian right to use the water, a natural servitude, cannot be lost by non-use because prescription of non-use does not apply to natural servitudes. See La.C.C. Art. 758.
Whether one can transfer a riparian right separately and distinctly from the full ownership (fee title) to riparian land has never been addressed by the courts of this State. However, in Keeleyv. Schexnailder, 1997-1609 (La. App. 3 Cir. 4/1/98); 708 So. 2d 838, the court considered a riparian landowner's grant of an easement of access to the waterfront to a non-riparian landowner. In upholding the right of access via the servitude, the court did not address whether it would uphold a grant of the riparian right to withdraw water.Id. at 843.[4] Even if the court had considered whether a right to withdraw water could be granted by the riparian owner, we doubt that such a grant could exceed the rights of the riparian owner since one cannot grant any more than one has.
Based upon the above analysis, if there is running water, the State of Louisiana owns the water in its capacity as a public person and holds it in trust for the people of the State. Because running water belongs to the State, La.Const. Art. VII, § 14 applies. This law provides:
Except as otherwise provided by this constitution, the property, or things of value of the state or any political subdivision shall not be . . . donated to or for any person, association, or corporation, public or private. *Page 4 
Accordingly, running water or impounded running water is not allowed to be taken out of a channel in a volume that would exceed the rights of use of other riparian owners. Running water is a thing of value that belongs to the people of the State of Louisiana. The question of what amount would exceed the rights of use of a riparian owner is a factual question in each particular case, and thus better left to a court of competent jurisdiction to decide.
CONTROL OF SURFACE WATERS IN CLEAR LAKE AND SMITHPORT LAKE INDESOTO PARISH
Smithport Lake and Clear Lake exist as lakes because they are impoundments created by a dam placed south of the lakes by the State of Louisiana. If the waters run into and through these lakes from tributaries of the Red River, running streams, creeks, bayous, etc., then they are running waters and the State of Louisiana controls the waters in at least two ways.[5] One, the running water is impounded by the dam and is water belonging to the State; and two, the Red River Compact (defined below) grants the State additional authority to control the tributaries of the Red River. In 1978, the Legislature enacted Act No. 71 which sets forth the Red River Compact and is now codified at La.R.S. 38:20, et seq.
Article VIII of that Compact provides:
ARTICLE VIII. APPORTIONMENT OF WATER-REACH V
SECTION 8.01. Reach V of the Red River consists of the mainstem Red River and all of its tributaries lying wholly within the State of Louisiana. The State of Louisiana shall have free and unrestricted use of the water of this subbasin.
This Article of the Compact makes it clear that the State has full control of the tributaries of the Red River in the above referenced subbasin.
Furthermore, if there is running water involved, the State of Louisiana owns that water in its capacity as a public person and holds it in trust for the people of the State.[6] As stated above, because running water is owned by the State, La.Const. Art. VII, § 14 applies and restricts the donation of things of value by the State. Again, this means that running water or impounded running water is not allowed to be taken free of charge out of the channel unless one is a riparian owner, and therefore subject to the restrictions of the Civil Code cited above. Running water is a thing of value and it belongs to the people of the State of Louisiana. In all cases where public property is involved, and if it can be sold, *Page 5 
the Louisiana Legislature has enacted specific statutes authorizing the sale of State property. The Legislature has apparently not done so in this case, as we have been unable to find any specific statutes authorizing the sale of the water in DeSoto Parish. However, the Red River Waterway Commission (RRWC)[7] has authority to control the use of the water within its jurisdiction. This office has spoken with RRWC and it has not, to date, issued any permits for the sale or use of the water within its jurisdiction. This would be a matter left to the statutory discretion of the RRWC.
GENERAL GUIDANCE:
In the event that any State agency or State political subdivision is presented with a request to transfer or sell State-owned surface waters within its statutory jurisdiction, the State agency or political subdivision should first review its statutory authority to determine if it is in fact authorized to sell the State-owned surface waters. If it is so statutorily authorized, the State agency or political subdivision may enter into negotiations with the private entity for the sale of State owned surface water, with the understanding that any such sale must be for fair value, and that any agreement must be reduced to writing in the form of a contract or cooperative endeavor agreement and, further, that any such agreement is subject to prior review and approval by the Office of the Attorney General and the Department of Natural Resources.
The prior written review and approval of the Attorney General and the Department of Natural Resources of any such agreement is mandated pursuant to the State constitutional obligations and mandates set forth in LA Const. Art. IX and which directs and requires these offices protect the natural resources and the environment of the State.
Finally, until such time as the Legislature specifically provides for the allocation of any sums received from the sale of such waters (unless specific statutory direction already exists), any agreement for the sale of State-owned surface water must include a provision that provides that all monies paid shall be placed in escrow and not released or expended without the written approval and consent of the Office of the Attorney General and the Department of Natural Resources. If such "specific direction already exists", the public entity claiming same should promptly notify in writing the Office of the Attorney General and the Department of Natural Resources of the statutory authority supporting this specific authority. *Page 6 
CONCLUSION:
The State of Louisiana and RRWC control the surface water in Smithport Lake and Clear Lake for the following reasons:
1. One of the stipulations in the servitude granted by the private landowners to the State of Louisiana for the fish and game preserve was that the State must declare the "inland waters" of said preserve or refuge to be a part of the preserve. In other words, to the extent that the private landowners of the beds and bottoms of these lakes have a right to "control" the water therein, they have ceded those rights to the State through the creation of the servitude.
2. If the water is running into the lakes, the water is controlled by the State based on the State's ownership of running waters.
3. The Red River Compact acknowledges that these waters are under the control of the State.
4. There are no statutory provisions authorizing the sale of the water in DeSoto Parish.
5. The RRWC has the authority to control the use of waters owned by the State within the jurisdiction of RRWC.
Accordingly, it is the opinion of this Office that no current authority exists specifically to sell the subject water by either the RRWC or the DeSoto Parish Police Jury, and that said authority can only be granted by legislation. Also, the RRWC has the statutory authority to control the use of the waters owned by the State within the jurisdiction of RRWC.
We trust that this response adequately addresses your questions. Should you have any further questions or concerns, please do not hesitate to contact this Office.
Sincerely,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ Irys L. V. Allgood Assistant Attorney General
JDC/ILA
[1] There are a few small tracts of land that have never been severed from the State.
[2] See La.R.S. 36:610.
[3] See also Verzwyvelt v. Armstrong-Ratterree, Inc.,463 So.2d 979 (La. App. 3 Cir. 1985) (same result for an oxbow lake, former channel of Red River).
[4] The ownership and use of waters is also regulated by federal statutes touching upon the subject, scattered provisions in the Louisiana Revised Statutes, and a few provisions of the Louisiana Civil Code. Special purpose districts of the State of Louisiana are clearly authorized in Chapter 38 of the Revised Statutes to use and distribute surface water for non-riparian purposes. See La.Const. Art. IX, Sec. 1 (1974); La.R.S. 9:1101; 14:58; 38:216; 56:362; 56:1431; 56:1451. In addition, Irrigation Districts (La.R.S. 38:2101), the Sabine River Authority (La.R.S. 38:2321, etseq.), and Water Conservation Districts (La.R.S. 38:2551, etseq.) are given authority to control water usage in designated areas. Additionally, La.R.S. 38:218 imposes a penalty if waters are diverted from their natural course and are not returned to it without undue retardation. Probably more significant in terms of the volume of water involved have been specific legislative authorizations. See specifically: municipalities, La.R.S. 33:841; waterworks districts, La.R.S. 33:3815; waterworks companies, irrigation companies and irrigation districts. For companies, see specifically La.R.S. 45:61; for districts, see La.R.S. 38:2112; for a number of special purpose districts, see La.R.S. 38:2501 et seq.
[5] The State of Louisiana "controls" the water because "control" is a subservient right of ownership. As noted above, the State of Louisiana owns all "running waters". Thus, the State also retains the lesser right of control over these waters.
[6] See La.Const. Art. IX, § 1.
[7] See La.R.S. 34:2301 et seq. *Page 1