Dear Mr. Carmody:
You have requested an opinion of this Office regarding the following questions:
1. Is it permissible to take surface water out of the Red River for the stated purpose of completing a natural gas well?
2. What procedures and permits are required for such action?
3. Since water is a "Public Trust Resource," are there any special considerations necessary?
OVERVIEW OF FACTS:
On November 24, 2009, the City Council for the City of Shreveport passed Resolution No. 225 of 2009 authorizing the Mayor of the City of Shreveport to execute, on behalf of the City of Shreveport, an agreement with Petrohawk Energy. This agreement would allow temporary installation of a water line traversing Clyde Fant Parkway right-of-way, property owned by the City of Shreveport, for the purpose of transporting water from the Red River to a gas well site on the west side of Clyde Fant Parkway in order to complete the well. Compensation for the use of the right-of-way was Fourteen Thousand Six Hundred Four Dollars ($14,604.00) for a term of twelve (12) days, but not to exceed thirty (30) days absent a renewal on the same terms. Your questions relate to these facts. *Page 2 
BACKGROUND LAW:
Under Louisiana law in general, the beds of naturally navigable water bodies are public things and the beds of non-navigable water bodies are private things. See La.C.C. Art. 450. However, the water running in a water body, whether navigable or not, is a public thing subject to public use.Id. See also La.C.C. Art. 452; La.R.S. 9:1101. Landowners with riparian property and members of the general public have the right to use running water for their needs, the latter only if they have access to it. Members of the general public do not have the right to cross private lands in order to access running water without some authority granted by the private landowner. SeePizanie v. Gauthreaux, 138 So. 650 (La. 1931);Delahoussaye v. Patout, Labau and Co., 81 So. 215 (La. 1919). The owner of an estate fronting on a river or stream has, in addition to the right of public use, a riparian right for the use of the water. La.C.C. Art. 657 explains that the owner of a riparian estate may use the water as it runs for agricultural or other purposes.[1] An owner whose estate is traversed by running water has an additional privilege. Article 658 of the Louisiana Civil Code authorizes such an owner to change the water's course within his property. However, he cannot prevent or permanently redirect the flow of the water. Rather, "he is bound to return it to its ordinary channel where it leaves his estate." La.C.C. Art. 658. With the exception of preventing a trespass on his own land, a riparian owner may not exclude the public use of the running water or the use of the water by other upstream or downstream riparian landowners.Id.
The riparian rights defined in the Civil Code are considered "accessory rights," which attach to riparian lands because of their adjacency to the water source. Delachaise v. Maginnis,11 So. 715, 716 (La. 1892). The riparian right to use the water, a natural servitude, cannot be lost by non-use because prescription of non-use does not apply to natural servitudes. See La.C.C. Art. 758. There have been no cases regarding a transfer of the riparian right to use the water separate and apart from the transfer of the land. Therefore, it remains to be seen whether the right to use water can be conveyed separately and distinctly from the land.[2]
Whether one can transfer a riparian right separately and distinctly from the full ownership (fee title) to riparian land has never been addressed by the courts of this State. However, inKeeley v. Schexnailder, 97-1609 (La. App. 3 Cir. 04/01/98); 708 So.2d 838 the court considered a riparian landowner's grant of a servitude of access to the waterfront to a non-riparian landowner. In upholding the right of access via the servitude, the court did not address whether it would *Page 3 
uphold a grant of the riparian right to withdraw water.Id. at 843.[3] Even if the court had considered whether a right to withdraw water could be granted by the riparian owner, we doubt that such a grant could exceed or impair the rights of the riparian owner since one cannot give any more than one has.
Based upon the above analysis, if there is running water, the State of Louisiana, in its capacity as a public person, owns the water and holds it in trust for the people of the State. Because running water belongs to the State, La.Const. Art. VII, § 14 applies. This law provides:
Except as otherwise provided by this constitution, the property, or things of value of the state or any political subdivision shall not be . . . donated to or for any person, association, or corporation, public or private.
Running water is a thing of value that belongs to the people of the State of Louisiana. Accordingly, running water or impounded running water is not free to be taken out of a channel in a volume that would exceed or impair the rights of use of other riparian owners. The question of what amount would constitute a volume large enough to exceed or impair the rights of use of a riparian owner is a question better left to a court of competent jurisdiction to decide.
Additionally, the "Public Trust Doctrine", as embodied in La.Const. Art. IX, § 1, provides as follows:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy. *Page 4 
In Save Ourselves, Inc. v. Louisiana Environmental ControlCommission, 452 So.2d 1152 (La. 1984), the Louisiana Supreme Court considered the Public Trust Doctrine and explained:
The Constitutional standard requires environmental protection "insofar as possible and consistent with the health, safety, and welfare of the people." La.Const. Art. IX § 1. This is a rule of reasonableness which requires an agency or official, before granting approval of proposed action affecting the environment, to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare. Thus, the constitution does not establish environmental protection as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors.
This doctrine, as enunciated and explained in this case, would also be applied by the public agency authorizing the withdrawal of running water in order to determine whether or not the water should be withdrawn and in what volume.
CONTROL OF SURFACE WATERS IN RED RIVER
The waters in Red River are clearly running waters and the State of Louisiana controls the waters in at least two ways.[4] The Red River Compact grants the State additional authority to control the section of the Red River and its tributaries within the Louisiana borders. In 1978, the Legislature adopted Act No. 71 which sets forth the Red River Compact and is now codified at La.R.S. 38:20, et seq. Article VIII of that compact provides:
ARTICLE VIII. APPORTIONMENT OF WATER — REACH V
SECTION 8.01. Reach V of the Red River consists of the mainstem Red River and all of its tributaries lying wholly within the State of Louisiana. The State of Louisiana shall have free and unrestricted use of the water of this subbasin.
This Article makes it clear that the State has full control of the waters in the Red River. *Page 5 
Furthermore, since there is running water involved, the State of Louisiana owns that water in its capacity as a public person and holds it in trust for the people of the State.[5] As stated above, because running water is owned by the State, La.Const. Art. VII, § 14 applies and restricts the donation of things of value by the State and belonging to the State. Again, this means that running water is not allowed to be taken free of charge out of the channel unless one is a riparian owner and all riparian owners are subject to the restrictions of the Civil Code cited above. Running water is a thing of value and it belongs to the people of the State of Louisiana. In all cases where public property is involved, and if it can be sold, the Louisiana Legislature has enacted specific statutes authorizing the sale of State property. The Legislature has not done so in this case since there are no specific statutes authorizing the sale of the water in the Red River by the City of Shreveport. However, the Red River Waterway Commission (RRWC)[6] has authority to control theuse of the water within its jurisdiction. This office has spoken with RRWC and has been informed that RRWC has not, to date, issued any permits for the sale, regulation or use of the water within its jurisdiction. This Office defers to RRWC's decision on this matter, as this would be a matter left to the statutory discretion of the RRWC.
GENERAL GUIDANCE:
In the event that any State agency or State political subdivision is presented with a request to transfer or sell State-owned surface waters within its statutory jurisdiction, the State agency or political subdivision should first review its statutory authority to determine if it is in fact authorized to sell the State-owned surface waters. If it is so statutorily authorized, the State agency or political subdivision may enter into negotiations with the private entity for the sale of State owned surface water with the understanding that any such sale must be for fair value and that any agreement must be reduced to writing in the form of a contract or cooperative endeavor agreement and that any such agreement is subject to prior review and approval by the Office of the Attorney General and the Department of Natural Resources.
The prior written review and approval of the Attorney General and the Department of Natural Resources of any such agreement is mandated pursuant to the State constitutional obligations and mandates set forth in La.Const. Art. IX which directs and requires these offices protect the natural resources and the environment of the State.
Finally, until such time as the Legislature specifically provides for the allocation of any sums received from the sale of such waters (unless specific direction already *Page 6 
exists), any agreement for the sale of State-owned surface water must include a provision that provides that all monies paid shall be placed in escrow and not released or expended without the written approval and consent of the Office of the Attorney General and the Department of Natural Resources. If such "specific direction already exists", the public entity claiming same should promptly notify in writing the Office of the Attorney General and the Department of Natural Resources of the statutory authority supporting this specific authority.
CONCLUSION:
For clarity we restate your questions:
1. Is it permissible for a private entity to take surface water out of the Red River for the stated purpose of completing a natural gas well? For the reasons set forth above, it is the opinion of this Office that, in addition to acquiring a servitude to cross Shreveport's property, Petrohawk must file a permit application with to RRWC requesting permission to withdraw the water for the stated purpose.
2. What procedures and permits are required for such action? As explained in the answer to your first question, Petrohawk, in addition to the servitude to cross the property, should request a permit from RRWC to withdraw the State-owned water.
3. Since water is a "Public Trust Resource," are there any special considerations necessary? Yes, the special considerations are explained in the Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La. 1984) as follows:
The Constitutional standard requires environmental protection "insofar as possible and consistent with the health, safety, and welfare of the people." La.Const. Art. IX § 1. This is a rule of reasonableness which requires an agency or official, before granting approval of proposed action affecting the environment, to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare. Thus, the constitution does not establish environmental protection as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors
Specifically with regard to the control of the running water, the State of Louisiana and RRWC control the surface water in Red River for the following reasons: *Page 7 
1. The Red River Compact acknowledges that these waters are under the control of the State.
2. There are no statutory provisions authorizing the sale of the running water under the jurisdiction of RRWC.
3. The RRWC has the authority to regulate the use of waters owned by the State within the jurisdiction of RRWC.
Accordingly, it is the opinion of this Office that no current authority exists specifically to sell the subject water and that said authority can only be granted by legislation. Also, the RRWC has the statutory authority to control the use of the waters owned by the State within the jurisdiction of RRWC and according to our conversations with RRWC no permit to use the water has been applied for or obtained by Shreveport nor Petrohawk.
We trust that this response adequately addresses your questions. Should you have any further questions or concerns, please do not hesitate to contact this Office.
Sincerely,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Irys L. V. Allgood Assistant Attorney General
JDC/ILA
[1] See also Verzwyvelt v. Armstrong-Ratterree, Inc.,463 So.2d 979 (La. App. 3 Cir. 1985) (same result for an oxbow lake, former channel of Red River).
[2] See also La. C.C Arts. 649, 650.
[3] The ownership and use of waters is also regulated by federal statutes touching upon the subject, scattered provisions in the Louisiana Revised Statutes, and a few provisions of the Louisiana Civil Code. Special purpose districts of the State of Louisiana are clearly authorized in Chapter 38 of the Revised Statutes to use and distribute surface water for non-riparian purposes. See La.Const. Art. IX, Sec. 1 (1974); La.R.S. 9:1101; 14:58; 38:216; 56:362; 56:1431; 56:1451. In addition, Irrigation Districts (La.R.S. 38:2101), the Sabine River Authority (La.R.S. 38:2321, etseq.), and Water Conservation Districts (La.R.S. 38:2551, etseq.) are given authority to control water usage in designated areas. Additionally, La.R.S. 38:218 imposes a penalty if waters are diverted from their natural course and are not returned to it without undue retardation. Probably more significant in terms of the volume of water involved have been specific legislative authorizations. See specifically: municipalities, La.R.S. 33:841; waterworks districts, La.R.S. 33:3815; waterworks companies, irrigation companies and irrigation districts. For companies, see specifically La.R.S. 45:61; for districts, see La.R.S. 38:2112; for a number of special purpose districts, see La.R.S. 38:2501 et seq.
[4] The State of Louisiana "controls" the water because "control" is a subservient right of ownership. As noted above, the State of Louisiana owns all "running waters". Thus, the State also retains the lesser right of control over these waters.
[5] See La.Const. Art. IX, § 1.
[6] See La.R.S. 34:2301 et seq.