WHIPPLE, C.J.
I gThis appeal arises from a possessory action brought by neighboring property owners to enforce their rights to a conventional servitude of passage. Following a trial, the trial court rendered judgment, dismissing plaintiffs’ claim with prejudice and denying plaintiffs’ requests for a permanent injunction and damages. From this judgment, plaintiffs appeal. For the following reasons, we reverse and render judgment in favor of plaintiffs, and remand the matter for a determination of damages.
FACTUAL AND PROCEDURAL BACKGROUND
On July 30, 2009, a judgment of possession was rendered in the Succession of Mary Lillian Bordelon Ford (“Ford’s succession”). The judgment of possession granted plaintiff Bob D. Welch ownership of 3.714 acres, known as Tract A in East *62 Baton Rouge, and a one-half ownership interest in adjoining property identified as Tract C. Likewise, the judgment of possession granted plaintiff Daniel T. Hoover ownership of .7065 acres, known as Tract B, and a one-half ownership interest in the property identified as Tract C. The judgment of possession further declared that Tracts A, B, and C included the benefit of the apparent servitude, as shown on a map and survey that was paraphed for identification with the will of Mary Lillian Borde-lon Ford. The paraphed map depicted and dedicated a thirty-foot private access servitude to Tracts A, B, and C.[1] The map depicted the servitude as containing two fifteen-foot wide lanes, running from tracts A, B, and C to a public street, identified as Glasgow Avenue. The 'map specifically stated that no trees, shrubs, or plants may be planted, nor shall any building, fences, or other improvements be constructed, within or over the servitude so as to prevent or ^unreasonably interfere with its purpose, and moreover, that the City-Parish has no responsibility for the maintenance of the servitude.
Defendant 2590 Associates, L.L.C. (“2590”) acquired the 118.72 acres that surrounded Tracts A, B, and C, including the land over which the servitude ran, and proceeded to develop the land into a traditional neighborhood development (“TND”), known as Rouzan. In November of 2011, 2590 submitted an application to the East Baton Rouge Planning Commission for the approval of “phase 3B (Creekside)” of Rouzan.
On January 23, 2012, Welch and Hoover filed a petition for possessory action, with requests for injunctive relief and damages, naming the Planning and Zoning Commission of the Parish of East Baton Rouge and 2590 as defendants. The petition alleged that plaintiffs’ possession of the servitude was disturbed by 2590’s actions in submitting an application to the planning and zoning commission for the approval of Phase 3B. Specifically, plaintiffs alleged that the application for Phase 3B provided for a conversion of part of their private servitude to a public road and the abolishment of the remainder of the servitude. The petition further alleged that the Planning and Zoning Commission had also disturbed plaintiffs’ rights to the servitude by recommending to the East Baton Rouge Metropolitan Council that the application for Phase 3B be approved. Plaintiffs sought a permanent injunction, prohibiting further disturbances of their possession of the servitude and restoring them to undisturbed possession of the servitude. Plaintiffs also sought a preliminary injunction, prohibiting defendants from submitting and approving any plans which further disturbed their possession of the servitude.
As the litigation proceeded, and prior to a ruling on plaintiffs’ request for a preliminary and permanent injunction, the application for the development of Phase 3B was approved by the Metropolitan Council and construction began on |4Phase 3B. Accordingly, plaintiffs filed two amending petitions, alleging further disturbances to their- servitude of passage and amending their request for injunctive relief.
Additionally, prior to a ruling on plaintiffs’ request for a preliminary injunction and permanent injunction, 2590 filed a motion for declaratory relief, seeking a judicial declaration that it could legally relocate plaintiffs’ servitude of passage and that plaintiffs are not entitled to exclusive use of any relocated servitude of passage. *63 In response to 2590’s motion for declaratory judgment, plaintiffs filed a motion for declaratory judgment averring that 2590 was not entitled to relocate the servitude until the requirements of LSA-C.C. art. 748 were satisfied. The trial court rendered a judgment on March 21, 2012, granting 2590⅛ motion for declaratory judgment, and denying plaintiffs’ motion for declaratory judgment.
Plaintiffs sought review of the March 21, 2012 ruling of the trial court by filing an application for supervisory writs with this court. Prior to this court rendering a decision on the writ application, 2590 filed into the public records for East Baton Rouge Parish notice of a temporary servitude of passage. However, the temporary servitude extended from the “dominant estate” to Perkins Road, not Glasgow Avenue.[2] By letter dated April 2, 2012, 2590 notified plaintiffs of the new temporary servitude location and that the former servitude would become impassible.
Notably, on August 13, 2012, this court granted plaintiffs’ application for supervisory writs, in part, and reversed the trial court’s grant of 2590’s motion for | ^declaratory judgment. In granting writs, this court noted that a declaratory judgment action is an ordinary proceeding that must be commenced by the filing of a petition, not by motion. Welch v. East Baton Rouge Planning Commission, 2012 CW 0619 (La. App. 1st Cir. 8/13/12) (unpublished writ action).
Following the filing of another application for supervisory writs by plaintiffs, this court again granted writs, in part, and issued a writ of mandamus on November 15, 2012, ordering the trial court to render a decision on the preliminary injunction sought by plaintiffs on or before November 29, 2012. Welch v. East Baton Rouge Planning Commission, 2012 CW 1875 (La. App. 1st Cir. 11/15/12) (unpublished writ action).
Nonetheless, on December 3, 2012, the trial court rendered judgment, denying plaintiffs’ request for a preliminary injunction, stating “petitioners failed to preponderate on the issue of likely to succeed on the merits and demonstrate irreparable injury and harm.” On January 8, 2013, this court granted writs; reversed the denial of plaintiffs’ application for a preliminary injunction; granted plaintiffs’ application for a preliminary injunction; and remanded the matter to the trial court to fix the amount of security to be furnished by plaintiffs. Welch v. East Baton Rouge Planning Commission, 2012 CW 2078 (La. App. 1st Cir. 1/8/13), 2013 WL 12120192 (unpublished writ action).
Following a contradictory hearing on the amount of security to be paid by plaintiffs, the trial court ordered plaintiffs to pay security in the amount of: $1,000,000.00 commercial surety bond, $500,000.00 property bond, and |fl$100,000.00 cash to be submitted into the registry of the court.[3] *64 Plaintiffs were unable to satisfy these security requirements.[4]
A bench trial on the merits of plaintiffs’ petition for possessory action and requests for injunctive relief and damages was conducted on August 20 and 21, 2013. Following the trial, the trial court took the matter under advisement and ordered all parties to submit proposed findings of fact, conclusions of law, and a proposed judgment.
On October 1, 2015, the trial court rendered judgment, dismissing plaintiffs’ claims against 2590.[5] From this judgment, plaintiffs filed the instant appeal which we will subsequently refer to as “Welch I,” contending that the trial court erred in dismissing plaintiffs’ claims, denying plaintiffs’ possession of the servitude, and failing to award damages to plaintiffs.[6]
|7DISCUSSION
A. Applicable Law
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. LSA-C.C. art. 646. The predial servitude continues as a charge on the servient estate when ownership changes. LSA-C.C. art. 650(B). The owner of the servient estate may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. LSA-C.C. art. 651. Predial servitudes may be natural, legal, and voluntary or conventional. LSA-C.C. art. 654.
Voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner. LSA-C.C. art. 654. Predial servitudes are established by all acts by which immovables may be transferred. LSA-C.C. art. 722. Thus, predial servitudes may be created by testament as well as by any means of contract translative of ownership, as a sale, an exchange, or a donation. See comment (b) to LSA-C.C. art. 722. A judgment of possession constitutes prima facie evidence of the legatee’s right of quasi-possession to a servitude. See comment (c) to LSA-C.C. art. 722.
The servitude in the present case was created by testament, and plaintiffs *65 obtained rights to the servitude pursuant to the judgment of possession rendered in the Succession of Ford. Accordingly, the servitude at issue constitutes a conventional servitude of passage.
A servitude of passage is the right for the benefit of the dominant estate whereby persons, animal, utilities, or vehicles are permitted to pass through the servient estate. LSA-C.C. art. 705. The use and extent of conventional predial servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. It is only where the title does not specify the extent of the right and the mode of | «exercise of a servitude of passage, that the servitude is subject to interpretation based on what is suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate. LSA-C.C. art. 705.
When the owner of a dominant estate is disturbed in his possession of the servitude, or when he is dispossessed, he may avail himself of a possessory action, pursuant to LSA-C.C.P. art. 3655. Article 3655 provides that “[t]he possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.” Injunctive relief is available to a plaintiff in a possesso-ry action under LSA-C.C.P. art. 3663. In-junctive relief under this article does not depend upon a showing of threat of irreparable injury, loss, or damage to the applicant. Horrell v. Matthews, 2006-1838 (La. App. 1st Cir. 8/15/07), 2007 WL 2318134 (unpublished). CL LSA-C.C.P. art. 3601. Injunctive relief is available for the protection of the right of a predial servitude on the basis of substantive provisions of the Louisiana Civil Code, without the need of allegation and proof of threat of irreparable injury, loss, or damage. Yiannopoulos, A.N., Louisiana Civil Law Treatise, Predial Servitudes § 9:16 (4th ed. 2013).
In addition to injunctive relief, the owner of the servient estate may be liable to the owner of the dominant estate under the laws of property as well as under the laws governing obligations when the dominant estate has been aggravated. Yianno-poulos, A.N., Louisiana Civil Law Treatise, Predial Servitudes § 7:9 (4th ed. 2013); See also Petchak v. Bossier Parish Police Jury, 45,705 (La. App. 2nd Cir. 11/24/10), 55 So.3d 840, 853, writ denied, 2011-0165 (La. 4/29/11), 62 So.3d 112. (“In this case, the pre-existing relationship between these parties before the damage to plaintiffs’ home was that of the owner of the right of use servitude and |9the owner of the ser-vient estate. This gave rise to the possibility of the breach of the real obligations •identified above and an indemnity which might then be due from either the owner of the personal servitude or the owner of the servient estate concerning the use or misuse of the servitude.”) ■
B. Louisiana Civil Code Article 748
The first issue we must address herein is whether or not there was a disturbance of plaintiffs’ rights to the predial servitude of passage, as plaintiffs contend, or whether there was a proper and justified relocation of the servitude pursuant to LSA-C.C. art. 748, as 2590 contends.
Louisiana Civil Code Article 748, found in the chapter governing conventional ser-vitudes, provides:
The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the ser-vient estate, or if it prevents him from *66 making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate.
In the present case, the servitude has already been “relocated.” Specifically, at the trial of the matter, Glen Jarrell, who testified on behalf of Glasgow Partners and 2590, testified that plaintiffs can now reach Glasgow Avenue by traveling on “a public road.” He further testified that the former servitude could not be maintained because in order to develop the servient estate into the approved Rouzan TND, culverts were installed that would interfere with the servitude location, and the streets of Rouzan had to connect with connecting cross-streets of Glasgow Avenue, whereas the servitude that had been granted to plaintiffs was located in the middle of two blocks. Mr. Jarrell testified that approximately ten | mlots would be affected if the servitude was maintained at its prior location and that these lots would not be sella-ble due to their reduced size.
In support of its argument that the servitude herein was properly relocated pursuant to LSA-C.C. art. 748, 2590 cites Ogden v. Bankston, 398 So.2d 1037 (La. 1981). In Ogden, the owner of an enclosed estate brought an action for injunction, seeking to prevent the developer who had acquired the servient estate from relocating a conventional thirty-foot wide servitude of passage. Notably, unlike the present matter, the developer in Ogden had not relocated the servitude prior to a final judicial determination as to whether or not the relocation was proper. The developer filed a declaratory action, as he desired to subdivide and market the property comprising the servient estate as a residential neighborhood, contending that the location of the servitude interfered with his plans to develop and sell the property. Thus, the issue before the court was whether it was satisfactorily shown that the present site of the servitude “ha[d] become more burdensome,” as required by LSA-C.C. art. 748. Ogden, 398 So.2d at 1044. The trial court found that the defendant could relocate the servitude, in part, as there was testimony that the location of the servitude would reduce the depths of some of the lots within the development and a real estate appraiser testified that this would make the lots “less desirable” and “less desirable lots generally bring less money.” Ogden, 398 So.2d at 1044.
While Ogden may support 2590⅛ argument that the location of the servitude at issue herein has “become more burdensome for the owners of the servient estate,” our inquiry does not end here, as LSA-C.C. art. 748 imposes additional requirements on the servient estate when relocating a servitude. Specifically, the first paragraph of LSA-C.C. art. 748 clearly provides “that [t]he owner of the In servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.” (Emphasis add- ' ed.)
Here, issues are presented as to whether or not the servitude has been “diminished” in violation of the first paragraph of LSA-C.C. art. 748. The “title” creating the servitude at issue herein, ie., the judgment of possession referencing the will and par-aphed map, provides for a thirty-foot wide servitude from Tracts A, B, and C to Glasgow Avenue. The “roads” which plaintiffs must now traverse from Tracts A, B, and C to Glasgow Avenue are not thirty-feet wide. Specifically, the final plat of Rouzan Phase 3B and 3C, as approved by the Planning and Zoning Commission on May 22, 2013, shows that Rue Perdant and Cal-lot Street, which now must be traversed to *67 reach Glasgow Avenue from Tracts A and B, are twenty-foot right-of-ways. Accordingly, we must determine if this reduction of the servitude’s width constitutes a “diminishment of the servitude” in violation of the first paragraph of LSA-C.C. art. 748.[7]
The first paragraph of LSA-C.C. art 748 prohibits the owner of the servient estate from doing something that tends to diminish the use of the servitude. However, this article must also be read in conjunction with LSA-C.C. arts. 697 and 705. As stated above, LSA-C.C. art. 697, governing conventional predial servitudes, provides, in pertinent part, that “[t]he use and extent of such servitudes are regulated by the title by which they are created.” Further, LSA-C.C. art. 705, governing conventional servitudes of passage, provides, in pertinent part, that “[ujnless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate.” Accordingly, reading these articles in pari materia, we interpret the first paragraph of LSA-C.C. art. 748 as prohibiting the |12owner of the servient estate from doing anything that would diminish the use or extent of the servitude, when the extent and use is provided for in the “title” establishing the servitude.
This interpretation is consistent with this court’s prior reasoning in Dupont v. Hebert, 2006-2334 (La.App. 1 Cir. 2/20/08), 984 So.2d 800, 807-808, writ denied, 2008-0640 (La. 5/9/08), 980 So.2d 695. In Du-pont, a twenty-foot servitude of passage was created by title. The owner of the servient estate subsequently built a turtle farm, and a portion of the farm was within the area of the twenty-foot servitude of passage. On review, this court reversed the trial court and ordered the owner of the dominant estate to remove the ■ encroachments, noting that since the terms of the title govern the use and extent of the servitude, the servient estate could not justify the encroachments by saying that they did not prevent the use of the right-of-way by the dominant estate. Dupont, 984 So.2d at 808. Moreover, this court found that the doctrine of equitable estoppel did not apply and further stated that “since there is positive law on the subject matter [of servitudes] at issue in this case, equity [could] not be invoked by the [trial] court.” Dupont, 984 So.2d at 806-807.
Additionally, we note the factual similarities between the present case and Hymel v. St. John The Baptist Parish School Board, 303 So.2d 588, 591 (La. App. 4th Cir. 1974), writ denied, 307 So.2d 370 (La. 1975). In Hymel, a prior act. of sale provided for a twenty-five-foot wide right-of-way. The owner of the servient estate, sought an injunction to prevent the dominant estate landownér from interfering with the use of the right-of-way. In reversing the trial court and ordering the removal of encroaching overhangs, the appellate court stated, “[i]t is only where the contract does not designate the width of the right-of-way that its extent is subject to interpretation based upon previous use of the servitude. | ^Pursuant to these articles[,] there could hardly be any doubt that plaintiffs are entitled to clear passage at ground level for the full width of 25 feet.” Hymel, 303 So.2d at 591. The appellate court further found that the trial court erred in reasoning that the overhang “is not of such a [d]egree that would warrant removal,” noting that the trial court’s reasoning was “not consistent with C.C. Art. 777 [now LSA-C.C. art. 748] which provides that the owner ‘can do [n]othing tending to *68 diminish’ the servitude’s use.” Hymel, 303 So.2d at 592.[8]
In the instant case, plaintiffs received rights to a conventional servitude of passage. The “title” establishing the servitude provided that the “extent” of the servitude over the servient estate was thirty-feet wide. When the title provides the exact dimension of the area affected by the servitude, that contract must be given full effect. Dupont, 984 So.2d at 807. The record before us clearly demonstrates that the width of the servitude, as provided for in the title, has been diminished. We find that this is a clear-cut violation of the spirit and the letter of the law as embodied in the codal articles and jurisprudence discussed above. Thus, the next issue before us is whether or not the violation was by defendant herein, and if so, what relief should be afforded to plaintiffs.
C. Disturbing Party
As an additional or alternative argument, 2590 contends that the trial court’s dismissal of plaintiffs’ claims against it was correct because 2590 sold Tract 3B to Glasgow Partners on April 5, 2012, and therefore, 2590 was not the “disturbing” |14party.[9] In making this argument, 2590 fails to recognize that a “disturbance” can be “in fact” or “in law.” A “disturbance in law” is defined as the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein. LSA-C.C. art. 3659.
The application for Phase 3B of Rouzan was filed by 2590 Associates on November 3, 2011. The application lists 2590 as the owner and developer of the property. The “subject property map” attached to the application depicts the “existing” thirty-foot wide private servitude of passage. However, the “final development plan map” attached to the application “replaces” the thirty-foot private servitude of passage running from plaintiffs’ property to Glasgow Avenue with green space, residential lots, and several right of ways within the development, including Mirabeau Drive and Prieur Avenue, which are identified as twenty-foot right-of-ways. Additionally, the final plat of Rouzan, as submitted to the Planning and Zoning Commission, states that it was submitted “for 2590 Associates.” The final plat again demonstrates that the thirty-foot wide servitude of passage to Glasgow Avenue has been replaced with twenty-foot wide right-of-I iBways and residential lots.[10]
*69 Accordingly, while the record may not clearly establish who actually performed the construction activities that “diminished” the subject servitude of passage, the record does clearly establish that 2590 executed and recorded documents that “disturbed” the servitude by diminishing the width of the servitude, as provided for in plaintiffs’ “title.” Accordingly, we reject 2590’s argument that the dismissal of plaintiffs’ claims against it was proper because plaintiffs failed to prove that 2590 was the disturbing party.
D. Relief
We next turn to a discussion of what relief is appropriate under the unique facts of this case. On the record before us, we find that plaintiffs possessed rights to a conventional thirty-foot wide servitude of passage running from their property to Glasgow Avenue, and that 2590, acting as owner and developer of the servient estate, disturbed plaintiffs’ rights to this servitude by diminishing the width of the servitude from the width specified in the “title” document establishing the servitude.[11]
| ^Pursuant to our authority under LSA-C.C.P. art. 2164, we hereby issue a mandatory injunction ordering 2590 or its successor(s) in interest to restore plaintiffs’ rights to the servitude to the same extent and mode as specified in the title establishing the servitude, he., the judgment of possession in Ford’s succession referencing the will and paraphed map.[12],[13]
Moreover, we find that plaintiffs are entitled to additional relief, in the form of damages, pursuant to the laws governing obligations, as this was a conventional servitude of passage, and the terms, he., the use and extent as set forth in the “title document,” were breached by 2590. See Petchak, 55 So.3d at 853-854. Since the trial court dismissed plaintiffs’ claims for damages and did not reach or resolve this issue, we will remand the matter to the trial court with instructions to expeditiously determine and fix the specific amount of damages due to plaintiffs. See Petchak, 55 So.3d at 855.
CONCLUSION
For the above and foregoing reasons, we hereby reverse the October 1, 2015 judgment of the trial court, which dismissed, with prejudice, plaintiffs’ claims against defendant, 2590. Judgment is hereby ren *70 dered recognizing and restoring plaintiffs’ rights to the thirty-foot conventional servitude of passage, as provided for in the title establishing the servitude. We hereby issue a mandatory injunction, ordering defendant to restore plaintiffs’ possession and rights to a thirty-foot conventional servitude of passage running from their property to Glasgow Avenue. Additionally, the matter is hereby remanded to the trial court for further | ^proceedings, with instructions to expeditiously determine and fix the specific amount of damages due to plaintiffs and to determine an expeditious time period within which such restoration shall be accomplished, consistent with the views expressed herein.
Costs of this appeal are assessed to defendant, 2590 Associates, L.L.C.
REVERSED AND RENDERED; REMANDED WITH INSTRUCTIONS.

. Hoover’s home is located on Tract A, Welch's home is located on Tract B, and Tract C is land without improvements.

. Plaintiffs testified that the temporary servitude, recorded on May 8, 2012, ran only from Tract A (Welch’s property) to Perkins Road and there was no direct access to the temporary servitude from Tract B (Hoover’s property) without traversing Tract A. Nevertheless, Welch did not deny Hoover access to this new servitude through his property, In an effort to resolve this issue, 2590 filed another notice of temporary servitude of passage into the public records on November 16, 2012, for Tracts B and C. Notably, plaintiffs testified that they were not able to use this servitude because it ran through a steep ditch.

. Prior to the contradictory hearing on the amount of security to be paid by plaintiffs, Glasgow Partners intervened in the lawsuit, averring that it had a justiciable interest in the controversy because it purchased the “servient estate” from 2590 on April 5, 2012.

. Although plaintiffs filed a notice of intent to file supervisory writs of review of the February 8, 2013 ruling of the trial court, which set forth the security to be paid by plaintiffs, the notice of intent was denied by the trial court with the notation "moot.”

. The trial court rendered separate judgments as to defendant, the East Baton Rouge Planning Commission, and intervenor, Glasgow Partners. These judgments are the subject of companion appeals also handed down this date. See Welch v. East Baton Rouge Planning Commission, 2016-0735 (La. App. 1st Cir. 4/26/17), 220 So.3d 70, 2017 WL 1532707 ("Welch II”); Welch v. East Baton Rouge Planning Commission, 2016-0751 (La. App. 1st Cir. 4/26/17), 220 So.3d 74, 2017 WL 1532708 ("Welch III”).

. In their first assignment of error, plaintiffs aver that the trial court erred by signing a judgment with the incorrect date of signing. The judgment in the record is dated as being signed on October 1, 2013; however, the minute entry states that the judgment was signed on October 1, 2015. Moreover, all parties acknowledge and agree that the reference to 2013 on the judgment was a typographical error. To correct this procedural error, this court issued an order remanding the case to the trial court for the limited purpose of correcting this typographical error in the judgment. An amended judgment, reflecting the October 1, 2015 signing date, was supplemented into the record on February 21, 2017.
Additionally, as a preliminary procedural matter, plaintiffs contend in their second assignment of error that the trial court erred in rendering three separate judgments for each defendant and intervenor. Although it is not clear in the record why the trial court did so, we are unable to say this was outside the trial court’s discretion.

. In Ogden, as relied on by 2590, there is no indication that the proposed relocated servitude was less than thirty feet wide, as specified in the "title” creating the servitude.

. See also Toso v. Borne, 388 So.2d 132, 134 (La. App. 4th Cir. 1980) ("Defendant may not thus reduce the width of the servitude ...."); Keeley v. Schexnailder, 97-1609 (La. App. 3rd Cir. 4/1/98), 708 So.2d 838, 842, writ denied, 98-1196 (La. 6/19/98), 720 So.2d 1216.

. We take judicial notice herein of the Secretary of State’s official governmental website, which reflects that 2590 and Glasgow Partners have the same registered domicile address, the same registered agent, and the same registered officer. See State v. Carpenter, 00-436 (La. App. 3rd Cir. 10/18/00), 772 So.2d 200, 206, writ denied, 2000-3152 (La. 1/25/02), 806 So.2d 665 (Judicial notice taken of the Secretary of State’s official governmental website, even though not requested by parties).

. Plaintiffs have filed a separate lawsuit against the East Baton Rouge Parish Metropolitan Council, relating to the approval of the Rouzan rezoning request, This separate lawsuit has been the subject of three prior appeals before this court. See Welch v. East Baton Rouge Metropolitan Council, 2010-1532 (La.App. 1 Cir. 3/25/11), 64 So.3d 249; Welch v. East Baton Rouge Parish Metropolitan Council, 2012-1440 (La.App. 1 Cir. 2/26/14), 2014 WL 1356808 (unpublished), writ denied, 2014-0805 (La. 5/30/14), 140 So.3d 1178; and Welch v. East Baton Rouge Parish Metropolitan Council, 2014-1758 (La. App. 1 Cir. 6/3/15), 2015 WL 3540426 (unpub *69 lished). In sum, plaintiffs alleged in this separate lawsuit, and this court found, that in approving the rezoning request, the Council violated the Unified Development Code ("the Code”), insofar as the Code requires the TND to have complete, unified, and legal control of all land within the TND. Following this court’s opinion that the Council violated the Code, the planning commission amended the Code to remove the requirement that a TND must have the complete, unified control of all property within the boundaries of the development. Plaintiffs did not dispute the authority of the Council to amend the Code, and thus, this court found it had no basis to further enjoin the City from approving the Rouz-an TND rezoning request.

.Inasmuch as we have found that plaintiffs are entitled to relief on the basis that the servitude was "diminished” in violation of the substantive provisions of the Civil Code governing conventional servitudes, we pretermit discussion of plaintiffs’ alternative argument that the servitude was improperly terminated.

. The obligation to demolish works and to restore the premises to its previous condition is a real obligation, i.e., a charge imposed on an immovable that follows any subsequent acquirer. Yiannopoulos, A.N., Louisiana Civil Law Treatise, Predial Servitudes § 7:10 (4th ed. 2013)

. This is not to say that 2590 or its successors in interest are prohibited from relocating the servitude, if all requirements of LSA-C.C. art. 748 are satisfied, and if there is no dimin-ishment of the servitude in violation of the first paragraph of LSA-C.C. art. 748.