| HE POINTE OF SLIDELL, LLC | * | NO. 2023-CA-0660 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| 360 FUEL CORPORATION | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-02885, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Rachael D. Johnson, Judge Karen K. Herman)

**JOHNSON, J., CONCURS IN THE RESULT.**

Julie Quinn
Quinn Law, APLC
112 Founders Drive
Baton Rouge, LA 70810

COUNSEL FOR PLAINTIFF/APPELLEE


William G. Cherbonnier, Jr.
The Caluda Group, L.L.C.
2550 Belle Chasse Hwy
Suite 215
Gretna, LA 70053

Donald J. Miester Jr.
Taggart Morton, L.L.C.
1100 Poydras St., Suite 2100
New Orleans, Louisiana 70163-2100

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED AS AMENDED.**
**MAY 15, 2024**

RLB
KKH

William Prosperie ("Prosperie") appeals the summary judgment granted against him on March 31, 2023. Appellee, Pointe of Slidell, L.L.C. ("The Pointe"), was awarded treble damages under the Louisiana Unfair Trade Practices Act. We affirm the trial court's decision.

The Pointe and its sole member, Louis Faust ("Faust") first crossed paths with Prosperie while The Pointe was in the process of rehabilitating a shuttered marina in Slidell, Louisiana. Faust ordered gas pumps for the marina from a local vendor. When the pumps arrived, Faust noticed that they were pre-fitted with credit card processing devices provided by 360 Fuel Corp. (sometimes referred to in this opinion as "360"). Faust had intended to use credit card devices from a different supplier. In September, 2020, Faust met with Prosperie to discuss removal of the devices. Instead, Prosperie persuaded Faust that 360 could provide a complete point of sale ("POS") system that would seamlessly and wirelessly integrate all of The Pointe's sales, including gas, with the company's inventory and accounting system. Faust knew that The Pointe would need these other services and decided to retain the unauthorized card processors and buy the remainder of the accounting services package from 360. Faust informed Prosperie that the renovated marina would be opening on February 1, 2021, and that delivery of the POS system before that date would be critical. Prosperie represented that he had

1

the knowledge, experience and equipment to provide the POS system in one month.

On December 30, 2021, just one month before the scheduled opening, 360 issued an invoice via email in the amount of $21,997 for the equipment and software. The Pointe paid the invoice the same day. 360 did not deliver its product until March. The total "system" consisted of a 27-inch touchscreen computer with a credit card "swipe" machine. This touchscreen computer had no inventory tracking or accounting software. It did not integrate with the fuel pumps, did not have the ability to make cash sales, and did not have codes for most of the products that The Pointe would be selling.

Faust called Prosperie's office immediately. Prosperie was not available and the person who answered the phone could not answer any of Faust's questions. Later in the day another person contacted Faust. He acknowledged that neither Prosperie nor 360 had ever built an inventory and accounting software system and that they were trying to build it for The Pointe for the first time. Faust informed the caller that he would be returning the computer immediately for a full refund.

All the equipment was returned via Federal Express the same day it was received. From that date forward, Prosperie never returned any of Faust's phone calls and never contacted Faust in person. Prosperie, who is apparently the sole shareholder[1] of 360, never refunded the purchase price and never caused 360 to refund the purchase price.

---

[1] A review of the Secretary of State records for all fifteen "360Fuel" entities shows that, with one exception, the only natural person named as a corporate officer or agent for service of process for each entity is Werlien Prosperie, III. The exception is 360 Processing, Inc., which shows Sonia McNamara as an officer. For several of the entities, the corporate filings list other "360Fuel" entities as members. Copies of the corporate filing data sheets from the Secretary of State were attached to The Pointe's motion for summary judgment as exhibits. This Court has the authority to take judicial notice of the Louisiana Secretary of State's governmental website.

***Procedural history.***

On April 1, 2021, The Pointe filed this lawsuit against 360. The suit claimed breach of contract, fraud, and breach of the Louisiana Unfair Trade Practices Act ("LUTPA").[2] On later investigation, counsel for The Pointe determine that there were fifteen entities registered with the Secretary of State's office that included the name 360Fuel. All were owned and controlled by Werlien Prosperie, III. It is an undisputed fact that there was no written contract governing the sale to The Pointe. The only document available to counsel in the creation of her petition was the invoice that was emailed to Faust. The invoice carries a graphic in large type announcing "360Fuel". It does not identify any entity associated with the name.

When suit was filed, the Secretary of State's office listed the business address of 360Fuel Corp. as 400 Poydras Street, Suite 1970, New Orleans, Louisiana, 70301. This address does not exist. The 70301 zip code covers mail deliveries primarily in Thibodaux, Louisiana and not in New Orleans. On December 20, 2021, Prosperie reinstated 360Fuel Corp. and gave it a business address of 400 Poydras Street, Suite 1970, Thibodaux, Louisiana, 70301. That address does not exist in Thibodaux, Louisiana. It is worth noting that of the fifteen similarly named entities, several were administratively terminated multiple times for failure to file annual reports. The reinstatement of 360Fuel Corp. in December 2021 is one of three reinstatements for that entity.

The Pointe encountered great difficulty in serving the defendant. The sheriff attempted service at the Lafayette address that Prosperie had given for himself as

---

*Welch v. Planning & Zoning Commission of East Baton Rouge Parish,* 2016-0253 (La. App. 1st Cir. 4/26/17), 220 So. 3d 60, 68 n.9

[2] La. R. S. 51:1401, *et seq.*

3

agent for service for 360Fuel Corp. The citation was returned unserved with a notation that the business had moved and left no forwarding address. The Pointe then employed two process servers and a private investigator to find 360 and serve the suit. The Pointe made no less than eleven attempts to serve the suit at the corporation's principal place of business over a period of nine months with many hours of time expended by the paid process servers. All these efforts were in vain.

In February 2022, The Pointe filed an amended petition naming Prosperie, individually, as a defendant. In June 2022, the trial court ordered the appointment of a curator to receive service for Prosperie at The Pointe's request. The curator filed her note of evidence in March 31, 2023, the date on which The Pointe's motion for summary judgment was heard. The note indicated that the curator made twenty-four separate attempts to contact Prosperie. Each correspondence included pleadings and discovery filed in the case as well as case status reports. The curator sent Prosperie twelve emails delivered to addresses the curator discovered by online research. She sent five certified letters to Prosperie's business addresses found through her internet search. Two of the certified letters were actually received by a person at Prosperie's business address. Two of the certified letters were returned undelivered and one was returned and marked "refused". Six first class letters were sent containing the same information as the certified letters at the same addresses. Five of those were not returned and were presumably delivered.

On March 30, 2023, the curator left a phone message for Prosperie that he returned later that same day. In that phone conversation the day before the hearing on the motion for summary judgment, Prosperie declared that he had absolutely no knowledge of the pending lawsuit.

4

***Summary judgment hearing.***

The Pointe's motion for summary judgment was heard by the trial court on March 31, 2023. The curator filed her note of evidence in the record before the hearing. The note of evidence details her efforts to communicate with Prosperie. When the case was called, the curator asked the court to continue the hearing, citing the telephone call with Prosperie from the day before. The court denied the oral motion to continue and proceeded to the argument of the motion for summary judgment. In denying the continuance, the judge commented, "I intend to deny your motion to continue, because I think this guy obviously knew about [the motion for summary judgment]." After hearing the arguments and reviewing the evidence, the trial judge granted judgment against Prosperie individually and awarded treble damages as permitted by LUTPA. Prosperie appeals from that judgment.

***Prosperie's allegations of error.***

Prosperie alleges ten errors by the trial court. These can be more efficiently analyzed and reviewed by grouping the alleged errors into three categories: (1) Procedurally, the trial court should not have heard the motion for summary judgment when it did; (2) Prosperie should not have been cast in judgment individually; and (3) Plaintiff did not meet the procedural or substantive requirements to support a judgment under LUTPA. These three categories are addressed individually below. For the reasons set forth below, we hold that none of Prosperie's claims have merit.

### *Date of hearing arguments.*

Prosperie argues that La. C.C.P. art. 966(C) prohibits the court from undertaking a motion for summary judgment less than 30 days prior to trial. As part of the argument, he alleges that the case was set for trial on April 4, 2023, just

5

two business days after the date assigned for the hearing. However, a search of the court record does not reveal that the matter was set for trial at all. The court held a status conference by telephone with the division's law clerk officiating. There is no record of a trial date ordered by the court as a consequence of the status conference. Prosperie points to the curator's note of evidence that indicates a trial date was set for April 4, 2023. Based on the record, the curator was mistaken about the trial date. The argument based on article 966(C) is without merit.

Next, Prosperie argues that the court should have granted the curator's motion to continue the summary judgment hearing based on Prosperie's lack of notice. It is well-settled law that the trial court has much discretion in the management of its docket. La. C.C.P. art. 1601 provides that, "A continuance may be granted in any case if there is good ground therefor." On the record, the trial judge commented on the curator's numerous communications directed to the defendants. The transcript of the hearing shows that the trial judge rejected Prosperie's claim that he had no knowledge of the ongoing litigation. The trial judge responded to the curator's oral motion to continue saying, "I intend to deny your motion to continue, because I think this guy obviously knew about it. …And, Ms. Kim, I appreciate your effort. But the guy knew about it…. He called you yesterday, and I don't buy it."

Based on the trial judge's comments, it is clear that he did not believe the curator's argument showed "good grounds" for a continuance. We also doubt Prosperie's claimed lack of notice based on the record before us.

A trial court's denial of a motion for continuance should not be disturbed on appeal in the absence of abuse of discretion by the trial court. *Newsome v. Homer Mem'l Med. Ctr.,* 2010-0564, p. 2 (La. 4/9/10), 32 So. 3d 800, 802. A trial court

must consider the particular facts of a case when deciding whether to grant or deny a continuance. Among the factors considered are the good faith and diligence of the party seeking the continuance; fairness to the parties; and the need for orderly and prompt administration of justice. *St. Tammany Par. Hosp. v. Burris*, 2000-2639, p. 4 (La. App. 1 Cir. 12/28/01), 804 So. 2d 960, 963. The transcript shows that the trial court properly considered these factors. We find that the court below acted properly and within its discretion in denying the continuance requested by the curator.

### *Personal liability arguments.*

Prosperie contends that summary judgment against him personally is proper only if The Pointe proved there were no genuine issues of material fact regarding Prosperie's status as a party to the contract. This is incorrect. The judgment here is based on fraud, not contract. Paragraph 3 of the judgment explicitly states that Prosperie violated LUTPA. If there were not a fraudulent and unfair trade practice, LUTPA would not have applied. To the extent that Prosperie has argued that he did not contract with The Pointe personally and that The Pointe did not present evidence sufficient to pierce the corporate veil, those arguments are irrelevant. It is true that The Pointe pled that Prosperie personally contracted for services and sales. However, not all contracts are made in good faith. A contract can be made for the purpose of defrauding another. *Robinson v. Wayne & Beverly Papania & Pyrenees Invs., LLC*, 2015-1354, p. 11, (La. App. 1 Cir. 10/31/16), 207 So. 3d 566, 575. That is what is alleged here and the judgment reflects that the judge accepted that allegation as proven. It is also true that it would be impossible to determine what corporate entity would have been the contracting party if Prosperie were not personally liable. Of the fifteen entities he controlled with 360Fuel in the name, it

7

could have been any one.  Prosperie cannot be heard to cry foul if the only written document involved in the contract is an invoice that bears only the generic name, 360Fuel. This conundrum is one of many reasons that our law requires distinguishable corporate names in the registry of the secretary of state.  La. R. S. 12:1-401.

Even if we assign relevance to Prosperie's arguments regarding the corporate shield and piercing the corporate veil, the arguments still fail.  During the course of this litigation, The Pointe directed requests for admission to Prosperie that were deemed admitted.  Included among the factual admissions were all the elements necessary to pierce the veil of whichever entity Prosperie might wish to put in his place as the defendant.

### *Treble damage arguments.*

Prosperie argues that LUTPA does not apply in this case. He claims that he did nothing immoral, unethical, oppressive, unscrupulous, or substantially injurious, citing *River Rental Tools, Inc. v. Smith Power Solutions, LLC*, 21-716, p. 6 (La. App. 4 Cir. 6/15/22), 342 So. 3d 1052, 1057.  At worst, he writes, he promised more than he could deliver.  Further, Prosperie argues that LUTPA does not apply unless the Attorney General put the defendant on notice, and he continued the wrongful practice after the notice.  Again, Prosperie's arguments are mistaken.

The statute controlling private actions under LUTPA is La. R. S. 51:1409, which provides in pertinent part that:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual

damages. *If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained.* In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs. [Emphasis added.]

La. R. S. 51:1409(A).

In order to state a cause of action under LUTPA, our Supreme Court has held that the petitioner must (1) suffer an ascertainable loss and (2) the loss must be caused by the defendants' use of unfair methods of competition and unfair or deceptive acts. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059. In order to qualify for treble damages, a plaintiff must satisfy this two-part test and prove that the deceptive or unfair practices continued after the defendant received notice of the complaint from the Attorney General. We believe that The Pointe has met its burden.

We find that Prosperie's actions were deceptive and fraudulent by design and to use the words of his brief, immoral and unscrupulous. In so finding, we merely point out what is evident in the paragraphs above. Prosperie took steps to hide the identity of the contracting party. Next, Prosperie arranged to have his credit card devices placed on the gas pumps without a request or authorization by the end user. From Faust's affidavit, we learn that Prosperie was aware that time was of the essence in delivering the point of sale accounting system. We also learn that "Prosperie expressly represented that he had the knowledge, experience and equipment to provide the POS system, and that he also could provide all of this within one (1) month." In two separate telephone calls recounted in Faust's, affidavit, employees of one or more of Prosperie's entities (or Prosperie, himself)

9

admitted that, "the company had never built any such system or offered it for sale." These admissions are not hearsay as defined by La. C.E. art. 801(D)(3)(a) and were properly considered by the trial court.

If Prosperie had simply promised more than he could deliver and his intentions were other than fraudulent, he would have made himself available to receive calls from Faust and would have volunteered to return Faust's payment. Instead, Prosperie engaged in months of evading service of process in a manner that more likely than not evidences his intent to avoid the consequences of his actions and maintain hold of his ill-gotten gains.

We now turn our attention to Prosperie's argument that a defendant cannot be liable for treble damages under LUTPA unless it continued to commit unfair trade practices after receiving the Attorney General's notice. Prosperie cites *Fat Catz Music Club, Inc. v. Fountain Servs. of Louisiana, Inc.*, 2020-0586 (La. App. 4 Cir. 4/21/21), 365 So. 3d 664, as support for this proposition. The argument made by Prosperie reflects a misreading of that case. In *Fat Catz,* the crux of the complaint was the defendant's sale of counterfeit beverages. The court noted that it was "undisputed" that defendant had discontinued these sales before suit was filed. *Id*. at p. 14, 365 So.3d 675. The court only held that the failure to refund ill-gotten gains after receiving notice does not entitle plaintiffs to treble damages in *every* case. *Id.* In this case, the record shows that every portion of Prosperie's deceptive scheme was still in place, including withholding The Pointe's funds. The unlawful practices consisted of false representations, deceptive tradenames, refusal to communicate regarding the refund demanded, evasive conduct by the contracting party and profiting by the deceit. All these continued up to and including the hearing on the motion for summary judgment. This case is more factually similar

10

to *McFadden v. Import One, Inc.,* 2010-952 (La. App. 3 Cir. 2/9/11), 56 So.3d 1212, in which the defendant held plaintiff's car as leverage to force him into a disadvantageous car sale. By continuing to pretend ignorance of The Pointe's claim, even at the summary judgment hearing, Prosperie continued his pattern of evasion and deceit.

Prosperie argues, in brief, that there is no evidence in the record that the Attorney General ever issued formal notice that a claim had been filed against him. This argument is contrary to the record. A copy of the Attorney General's letter is attached to the curator's note of evidence that was entered into the record on the same day but prior to the hearing of the motion for summary judgment. A review of the curator's note of evidence shows that the letter was issued to the curator by the Attorney General on March 1, 2023. The curator's note of evidence relates that she sent the Attorney General's notice to Prosperie on March 10, 2023, by certified and first class mail as well as by email at three different email addresses. Both letters were returned with "refused" marked on them. The emails were not returned. The Attorney General's letter advised Prosperie and his company that The Pointe had filed this claim against him. The Attorney General's office included in that letter a statement that:

> The purpose of this notice is to place 360 Fuel Corporation on notice of this claim…Having received this notice, should the same be found by a court of competent jurisdiction to constitute a violation of Louisiana Revised Statute 51'-1401, *(sic)* et seq., the Unfair Trade Practices Act and Consumer Protection Law, the petitioner in said suit will have fulfilled the notice requirement under La. R.S. 51-1409 *(sic)*…

Notice to the curator alone is legally sufficient to trigger the treble damage provision of La. R. S. 51:1409. The curator is the duly appointed agent to receive

service of such documents according to the trial court's order. In addition, the curator took reasonable steps to see that Prosperie and his companies had actual notice of the Attorney General's letter. Prosperie should not benefit from his refusal to accept mail or electronic communications from his attorney. Several appellate circuits have held that the Attorney General's form letter giving notice is adequate under the private action portion of LUTPA. See, *e.g.*, *McFadden* at p. 16, 56 So. at 1223.

In concluding that Prosperie received adequate notice from the Attorney General, we must also hold that a portion of the trial court's judgment is in error and must be amended. It is the customary practice in Civil District Court for the Parish of Orleans that the prevailing party in motion practice prepares a proposed judgment, circulates it to opposing counsel, then presents it to the court for signature. In this case, The Pointe's counsel presented a proposed judgment in keeping with that practice. Paragraph 3 of the proposed judgment reads as follows:

> Defendant Werlien Prosperie violated the Louisiana Unfair Trade Practices Act, and was put on notice of this claim by the Louisiana Attorney General, and therefore is liable to Plaintiff, The Pointe of Slidell, LLC for three times the actual damages sustained plus reasonable attorney's fees and costs;

The trial judge signed the judgment after striking from Paragraph 3 the words, "and was put on notice of this claim by the Attorney General". For the reasons set forth in the preceding paragraphs, we hold that Prosperie was put on notice by the Attorney General. This holding follows La. C. C. P. art. 966(A)(4)(a), which provides that a court may consider pleadings filed in support of a motion for summary judgment in the same case as the pleadings. As noted above, the curator's note of evidence was made part of the record by its filing prior to the hearing on

the motion for summary judgment. Under La. C.C.P. art. 853, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." The Attorney General's letter that was submitted by the curator should have been considered by the trial court when ruling on the motion.

A final complaint made in Prosperie's brief deserves comment. Prosperie points out that the curator failed to file an opposition to The Point's motion for summary judgment. As a means of supporting its procedural arguments, Prosperie writes that the curator is to act in every manner as the attorney of record for the absent defendant. Although this is a correct statement of the applicable law, we must note that an attorney may not raise defenses that have no basis in fact. To do so would violate the attorney's ethical duties and La. C.C.P. art. 863(B)(3), which requires the attorney to plead only facts and assertions that have evidentiary support. Lacking any communication from her "client", the curator is hamstrung in presenting any defense or opposition to The Pointe's motion. The efforts made by the curator in this case meet or exceed any and all duties imposed on her by her appointment.

*Conclusion.*

Having exhausted all of Prosperie's defenses, we hold that the trial court's judgment was correct in all regards except that the judgment should have reflected that Prosperie received notice of the pending action as required by LUTPA. Therefore, we affirm the decision of the trial court and amend paragraph 3 of the judgment to state affirmatively that Prosperie received notice of this claim from the Attorney General.

**AFFIRMED AS AMENDED.**

13